**STATE OF OKLAHOMA, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary, Department of Health, Education and Welfare, et al., Defendants,**

**State of Michigan and State of New Mexico, Intervenors.**

**Civ. No. 73–425–C.**

United States District Court, W. D. Oklahoma.

June 30, 1973.

Larry Derryberry, Atty. Gen. of Okl., Paul C. Duncan and Joe C. Lockhart, Asst. Attys. Gen., Oklahoma City, Okl., for plaintiff.

Frank J. Kelley, Atty. Gen. of Mich., and Gerald F. Young, Asst. Atty. Gen., Lansing, Mich., for State of Mich., intervenor.

David Norvell, Atty. Gen. of N. M., and Andrea Buzzard, Asst. Atty. Gen., Santa Fe, N. M., for State of N. M., intervenor.

William R. Burkett, U. S. Dist. Atty., and John E. Green, Asst. U. S. Dist. Atty., Oklahoma City, Okl., for defendants.

## DECLARATORY JUDGMENT, PERMANENT INJUNCTION AND MANDATORY WRIT

CHANDLER, District Judge.

This matter comes on for duly noticed hearing this 30th day of June, 1973, the plaintiff and intervenors appearing by counsel of record and the defendants appearing by William R. Burkett, United States Attorney and John E. Green, Assistant United States Attorney for the Western District of Oklahoma. The facts not being in dispute the Court ordered trial on the merits to be advanced and consolidated with the hearing of the Application as authorized by Rule 65, F.R.Civ.P., and the Court being fully advised finds the facts to be as follows:

This is a civil action seeking to compel the Secretary of the Department of Health, Education and Welfare, the Director of the Office of Management and Budget and the Acting Commissioner of the Office of Education to allot, allocate and otherwise make available for disbursement and distribution to plaintiff and intervenors the full amount of monies which were appropriated by Congress for funding three programs under the Library Services and Construction Act of 1956, 20 U.S.C. § 351 et seq. (hereinafter referred to as "LSCA").

The authorization for appropriations to States under LSCA are found in Chapter 16 of Title 20 of the United States Code. Section 351 of Title 20 states that "It is the purpose of this chapter to assist the States in the extension and improvement of public library services in areas of the States which are without such services or in which such services are inadequate, and with public library construction, and in the improvement of such other State library services as library services for physically handicapped, institutionalized, and disadvantaged persons, in strengthening State library administrative agencies, and in promoting inter library cooperation among all types of libraries."

20 U.S.C. § 351b authorizes various sums to be appropriated pursuant to Titles I, II and III of LSCA. 20 U.S.C. § 351c provides the formulas by which appropriated funds are to be allotted to the States. By use of the word "shall" in Section 351c with respect to the minimum allotment to each State as well as to allotment of the remainder of the sums appropriated, it is clear that Congress intended that such allotment be mandatory. Such allotment is conditioned only upon the States' meeting the requirements with respect to state plans and programs provided by 20 U.S.C. § 351d.

H.R. 15417, the Department of Labor, and Health, Education and Welfare Appropriation Act of 1973 was passed by the House of Representatives on June 19, 1972. On June 28, 1972, the Senate passed H.R. 15417. Identical amounts were appropriated by each House for funding Titles I, II and III of LSCA.

On July 1, 1972, the President signed into law Public Law 92–334, 86 Stat. 402 which continued appropriations for a large number of programs during fiscal year 1973 including those presently in controversy.

Public Law 92–334 provided that the appropriations for programs which have been funded under a listed Appropriation Act were to be available to the "extent and in the manner which will be provided by the pertinent Appropriation Act." Public Law 92–334 further provided in Section 101(a)(3) that where the House and Senate versions of H.R. 15417 differ, the amount appropriated for any program under the Joint Resolution shall be the lesser of the two versions.

Section 102 of Public Law 92–334 states that the appropriations therein shall remain available until either passage of an Appropriation Act or August 18, 1972, whichever first occurs. Following veto of H.R. 15417 the Joint Resolution (Public Law 92–334) has been since extended four times with the present expiration date being the end of fiscal year 1973 or June 30, 1973. Pub-

lic Law 92–390, 86 Stat. 563 extended the Continuing Resolution to September 30, 1972, Public Law 92–446 to October 14, 1972, Public Law 92–571, 86 Stat. 746 to 86 Stat. 1204 to February 28, 1973 and Public Law 93–9, 87 Stat. 7 to June 30, 1973.

Public Law 92–334, commonly referred to as the Continuing Resolution, was signed into law by the President and has the same force and effect as an Appropriations Act. The provisions thereof are therefore mandatory on these defendants.

The actions of defendants are part of a general policy decision affecting all HEW programs for fiscal year 1973. This decision was expressed by Defendant Weinberger as Secretary of HEW in his letter of November 27, 1972, replying to a formal inquiry from Senator Magnuson, Chairman of the Subcommittee on Labor, and Health, Education and Welfare. The letter stated:

"All HEW activities for which funds were requested in the Labor-HEW appropriation bill may be continued at a rate of operations not in excess of the 1972 rate, the 1973 budget request, or the House or Senate allowance, whichever is lower. This ruling applies to both discretionary funds and formula grants."

Insofar as defendants have followed this policy to impound funds appropriated for formula grant programs such as those programs presently at issue, they have violated the clear mandate of the Acts discussed herein, the United States Constitution, the Administrative Procedure Act, and their own regulations.

Plaintiff and intervenors seek declaratory judgment establishing their rights, injunctive relief and a mandatory writ to compel defendants to allot, release and distribute monies authorized and appropriated by the Congress to fund this program for the fiscal year ending June 30, 1973 (hereinafter referred to as "FY 1973").

Jurisdiction is based on 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 1331, 1361, 2201 and 2202.

The amount in controversy exceeds Ten Thousand Dollars ($10,000), exclusive of interest and costs.

Plaintiff, State of Oklahoma (hereinafter referred to as "Oklahoma"), and intervenors are sovereign states of the United States of America. Plaintiff and intervenors bring this action on their own behalf, as representative for their local political subdivisions and as *parens patriae* for the citizens of their states, to enforce rights and benefits conferred on them, their subdivisions and their citizens, by the LSCA.

Defendant Caspar W. Weinberger is Secretary of the United States Department of Health, Education, and Welfare (hereinafter referred to as "HEW"). As Secretary of HEW, he is responsible for and is charged with the duty of administering programs of federal aid to education. He discharges this responsibility both directly and by delegation to subordinates. He is chief officer of HEW and is responsible for its policies and practices.

Defendant John R. Ottina is Acting Commissioner of the United States Office of Education (hereinafter referred to as "OE"). As Commissioner of Education and delegate of the Secretary of HEW, he is responsible for and is charged with the duty of allotting and disbursing annual appropriations for and otherwise administering programs of federal aid to education under the ESEA, the VEA and the AEA. He is chief officer of OE and is responsible for its policies and practices.

Defendant Roy L. Ash is Director of the United States Office of Management and Budget (hereinafter referred to as "OMB"). As Director of OMB, he is responsible for and is charged with the duty of apportioning revenues appropriated by the United States Congress, including the apportionment of revenues appropriated to fund the programs of federal aid under the LSCA. He is chief officer of OMB and is responsible for its policies and practices.

At all relevant times, plaintiff and intervenors have been and presently are in full compliance with all requirements for receipt of the funds for which they are eligible and entitled and which funds are to be distributed by the Commissioner of OE under the LSCA, including the submission and approval of such state plans, applications and requests as are required by the Act and by rules and regulations of defendants.

In January of 1972, President Richard M. Nixon presented an FY 1973 budget request for funding these programs as follows:

| | | |
|---|---|---|
| (a) Title I of LSCA | -- | $30,000,000 |
| (b) Title II of LSCA | -- | -0- |
| (c) Title III of LSCA | -- | 2,730,000 |

Both the Senate and House of Representatives' versions of H.R. 15417, the Department of Labor, and Health, Education and Welfare Appropriation Act 1973, appropriated LSCA programs during FY 1973 in the following amounts:

| | | |
|---|---|---|
| (a) Title I of LSCA | -- | $62,000,000 |
| (b) Title II of LSCA | -- | 15,000,000 |
| (c) Title III of LSCA | -- | 7,500,000 |

President Nixon did not sign H.R. 15417, as passed by both Houses of Congress, but returned it with his Veto Message on August 16, 1972.

On July 1, 1972, being the first day of FY 1973 and H.R. 15417 not yet having been signed by the President, the President signed Public Law 92–334, which had been passed by Congress as a Joint Resolution appropriating funds during FY 1973 for, *inter alia* these LSCA programs, "to the extent and in the manner which would be provided by the pertinent appropriation Act," referring to the HEW Appropriations Act for Fiscal Year 1973, H.R. 15417.

Public Law 92–334 further provides, in Section 101(a)(3), that where the House and Senate versions of H.R. 15417 differ, the amount appropriated for any program under the Joint Resolution shall be the lesser of the two versions.

Pursuant to Public Law 92–334, as amended by Public Law 93–9 on March 8, 1973, Congress appropriated funds for these LSCA programs through June 30, 1973, being the end of FY 1973, as follows:

| | | |
|---|---|---|
| (a) Title I of LSCA | -- | $62,000,000 |
| (b) Title II of LSCA | -- | 15,000,000 |
| (c) Title III of LSCA | -- | 7,500,000 |

Of the amount thus appropriated by Congress, defendants have allotted $32,730,000 but have refused and continue to refuse to allot, allocate, apportion or pay to plaintiff and others similarly situated, the sum of $51,770,000 to which they are entitled, for the funding of these LSCA programs during FY 1973. To the contrary, defendants have withheld and impounded said sum, in amounts as follows:

| | | |
|---|---|---|
| (a) Title I of LSCA | -- | $32,000,000 |
| (b) Title II of LSCA | -- | 15,000,000 |
| (c) Title III of LSCA | -- | 4,770,000 |

As the result of defendants' unlawful impoundment of appropriated funds for FY 1973, Oklahoma, its local political subdivisions and its citizens have suffered a direct loss in LSCA funds in approximate amounts as follows:

| | | |
|---|---|---|
| (a) Title I of LSCA | -- | $ 467,000 |
| (b) Title II of LSCA | -- | 240,000 |
| (c) Title III of LSCA | -- | 85,000 |

As the result of defendants' unlawful impoundment of appropriated funds for FY 1973, Michigan, its local political subdivisions and its citizens have suffered a direct loss in Titles I, II and III of LSCA funds of approximately $2,101,406.

As the result of defendants' unlawful impoundment of appropriated funds for FY 1973, New Mexico, its local political subdivisions and its citizens have suffered a direct loss in Titles I, II and III of LSCA funds of approximately $535,895.

■ The defendants assign as reasons for the refusal to pay said funds as provided by law the status of the economy and the need to control inflationary pressures. Defendants' impoundment of appropriated funds is neither authorized by nor is it in furtherance of the purposes of Congress and is violative of the LSCA, Public Law 92–334, Articles I and II of the United States Constitution, 5 U.S.C. § 553 and 45 C.F.R. § 5.13.

Plaintiff and intervenors have no adequate remedy at law.

■ Such action of defendants will cause irreparable injury, loss and damage to plaintiff and intervenors because Section 102 of the Joint Resolution making these appropriations, Public Law 92–334, as amended, provides that the funds appropriated therein for Fiscal Year 1973 shall not remain available for allotment beyond June 30, 1973.

If the funds which defendants have withheld and impounded are not allotted to plaintiff and intervenors by June 30, 1973, these funds will not thereafter be available for allotment, distribution or payment to plaintiff and intervenors.

## JUDGMENT, INJUNCTION AND MANDATORY WRIT

Therefore, the Court hereby declares and adjudges that said defendants' actions in impounding and withholding said funds are unconstitutional and unlawful and

It is ordered that the defendants, and each of them individually, and each of them in his official capacity, jointly, and severally, and their agents, employees, successors and all persons acting in concert or cooperation with them or at their direction, are hereby enjoined from continuing to fail and refuse to allot, distribute and disburse the $51,770,000 of funds appropriated by the Congress for funding LSCA programs referred to herein during FY 1973 and particularly $792,000 which is approximately the amount appropriated which said defendants have wrongfully refused to allot and pay to the plaintiff; $2,101,406 to the State of Michigan; and $535,895 to the State of New Mexico.

And said defendants and each of them, in the capacities hereinbefore designated, are hereby ordered to allot, dis-

tribute and pay forthwith to the State of Oklahoma, the State of Michigan and the State of New Mexico all monies appropriated for funding said LSCA programs.