**JACKSONVILLE PORT AUTHORITY, a body politic and corporate of the State of Florida, Appellant,**

**v.**

**Brock ADAMS, as Secretary of Transportation of the United States, et al.**

**No. 76–1542.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1977.

Decided March 30, 1977.

54

Charles S. Rhyne, Washington, D. C., with whom William S. Rhyne and Donald A. Carr, Washington, D. C., were on the brief, for appellant.

David M. Cohen, Atty., Dept. of Justice, Washington, D. C., for appellees. Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Robert E. Kopp and John M. Rogers, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees. John A. Terry, Tobey W. Kaczensky, Asst. U. S. Attys., and Thomas G. Wilson, Atty., Dept. of Justice, Washington, D. C., also entered appearances for appellees.

Before WRIGHT, TAMM and LEVENTHAL, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

The Jacksonville Port Authority sought a temporary restraining order (TRO) shortly after District Judge Parker had invalidated the FAA's priority system and ruled that airport sponsors are entitled to their full allotment of airport development funds under the enplanement formula in 49 U.S.C. § 1715(a)(1)(B).[1] Plaintiff's application for the TRO was filed shortly before the cutoff date of the authority of the Federal Aviation Administration (FAA) to make funding obligations. The application was denied. After passage of the cutoff date, Judge Parker dismissed the complaint for injunctive relief as moot, on the grounds that the FAA was unequivocally prohibited by 49

---

1. *City of Los Angeles v. Coleman,* 397 F.Supp. 547 (D.D.C.1975), affirmed in part, reversed in part, in companion decision issued this day,

No. 75–1965, *City of Los Angeles v. Adams,* 181 U.S.App.D.C. ——, 556 F.2d 40.

U.S.C. § 1714(b) (now, § 1714(b)(1)) from taking action after June 30, 1975 to obligate Trust Fund money.

## I. MOOTNESS

Some of the impoundment cases[2] faced a similar argument raised by the federal defendants—that even if funds were wrongfully impounded, they could not be disbursed after the end of the fiscal year for which they had been appropriated by virtue of the lapse provision of 31 U.S.C. § 701(a)(2). In most cases, preliminary injunctive relief was granted by the district court to prevent lapse and hold the situation in status quo for determination on the merits.[3] Relief has been granted in two impoundment cases: where suit was brought after the end of the fiscal year for which funds were due, *Commonwealth of Pennsylvania v. Weinberger*, 367 F.Supp. 1378 (D.D.C.1973), and where class certification was sought thereafter, *State of Louisiana v. Weinberger*, 369 F.Supp. 856 (E.D. La.1973). The courts held that the suits were not blocked by 31 U.S.C. § 701(a)(2).

> This court does not agree with defendants that [§ 701(a)(2)] can, or should, be used to provide a defense to the Executive Branch against suits to compel the payment of funds appropriated by Congress and impounded by the Executive Branch during and through the applicable fiscal year.[4]

We are presented with an easier case, as Jacksonville sued for grant of its application and sought preliminary relief before the statutory deadline. Relief at this time would unquestionably be available if the district had issued a preservation decree such as it did in *Los Angeles*—requiring the FAA to make a provisional grant that would be subject to reflection on the merits. Before we examine whether it was an abuse of discretion to deny this relief in a TRO, we must decide whether the case is moot, *i. e.*, whether the FAA can now be ordered to make grants of entitlements from fiscal year 1975.

■ In *Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), trustees sued for refund of a tax which should have been collected from the beneficiary of the trust. Collection from the beneficiary was barred by the statute of limitations. Applying equitable principles, the Court took account of the reality of the sole beneficiary's identity of interest with the trustees and allowed the government to retain the tax due, in spite of a statutory prohibition against using a time barred deficiency as an offset to a refund.[5] Similar equitable considerations prevent an agency from raising a statutory prohibition on it—in reality, a command to meet a deadline—as a defense to a suit brought prior to that deadline for money withheld by the agency's arrogation of unauthorized discretion.

■ In our view, the prohibition in § 1714(b) operates as a ban on initiation of a grant by the FAA on its own after June 30, 1975. Congress imposed a deadline on the FAA, to avoid procrastination and the dangers of an agency discretion to dip into old unused authorizations. Here, Jackson-

---

**2.** *See generally Train v. City of New York*, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975); *State Highway Comm'r v. Volpe*, 479 F.2d 1099 (8th Cir. 1973) and cases cited *infra*, notes 3–4.

**3.** *E. g., National Council of Community Mental Health Centers v. Weinberger*, 361 F.Supp. 897, 900 (D.D.C.1973); *Los Angeles, supra; State of Oklahoma v. Weinberger*, 360 F.Supp. 724 (W.D.Okl.1973); *Community Action Programs Executive Directors Assn. of New Jersey v. Ash*, 365 F.Supp. 1355 (D.N.J.1973); *Bennett v. Butz*, 386 F.Supp. 1059 (D.Minn.1974).

**4.** *Louisiana, supra*, 369 F.Supp. at 860. *See Pennsylvania, supra* 367 F.Supp. at 1385–87.

These cases involved education funds to which there was an arguably applicable carryover of authorization provision, 20 U.S.C. § 1225(b). *Pennsylvania*, 367 F.Supp. at 1382–85; *Louisiana*, 369 F.Supp. at 861. The courts held that the money was available even without reliance on that provision.

**5.** *Stone, supra*, 301 U.S. at 538–39, 57 S.Ct. 851. In *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 300–03, 67 S.Ct. 271, 91 L.Ed. 296 (1946), the Court limited the recoupment doctrine to taxes arising from a single transaction.

ville has made timely application and brought suit within the time the agency is authorized to act, seeking judicial determination and vindication of its entitlement to the funds.

 A congressional deadline on an agency's ability to take action on its own motion does not preclude an agency's authority to take later action on direction of a court exercising judicial review.[6] Appellate courts have been given authority to enter such remedies as may be appropriate in the interest of justice. 28 U.S.C. § 2106. If the district court abused its discretion in failing to preserve plaintiff's rights unequivocally with a TRO, the appellate court may, in the interest of equity and justice, make the plaintiff whole by ordering the FAA and the district court to act as if there had been a conditional grant prior to June 30, 1975.

 This judicial approach is not unlike the equitable doctrines of constructive trust or equitable lien, where an equity court deems a trust or lien to have arisen at a prior time from the actions and relationship of the parties. In the interest of justice, the court may proceed as if action that should have been taken in the courthouse was timely taken.[7]

 As the district court said in the *Pennsylvania* case:

[T]he equitable power of the Federal Courts is broad, and it is a well-established prerogative of the Court to treat as done that which should have been done. Here the Court has found that the funds should have been obligated in FY 1973. The statutory specifications of authority to obligate Federal funds define and limit Defendants' standard operating authority, but do not purport to circumscribe the powers of the Federal Courts to provide

appropriate relief when the disputed funds are found to be available.[8]

We recently decided that the district court could award to the rightful recipients federal grants recovered from improper disbursement, notwithstanding the lapse provision and expiration of the agency's authority to obligate funds.

In any event, a District Court is enabled, as we shall see, to order funds to be held available, beyond a statutory lapse, if equity so requires.[9]

We further noted, after quoting from the *Pennsylvania* opinion:

Indeed, the trial court in this case ordered that funds which had been impounded and then released continue to be made available to the states beyond the lapsing date. That earlier order is conceivably different, however, since HEW would continue its disbursements under the authority of the original statute. Here, it is urged, HEW is without authority to continue since the original statute has been replaced. But, the new statute, in pertinent part, appears quite similar to the old one, the subject of this case, and may well provide continued authority for the HEW Plan.[10]

 In appraising the equity and justice of ordering a grant under lapsed authority, it is material to consider whether Congress has turned its back on the program as contrary to sound policy. As to the statute at hand, Congress has provided authority for grants for fiscal years 1976–80, P.L. 94–353, 90 Stat. 871 (1976). The House Report states:

Extensive hearings by the Subcommittee on Aviation have demonstrated that the

---

6. *International Harvester Co. v. Ruckelshaus,* 155 U.S.App.D.C. 411, 446, 478 F.2d 615, 650 (1973).

7. *Dillane v. United States,* 121 U.S.App.D.C. 354, 350 F.2d 732 (1965) (appeal allowed out of time if the defendant's counsel failed to notify him of the right to appeal, amounting to ineffective assistance of counsel).

8. *Commonwealth of Pennsylvania v. Weinberger,* 367 F.Supp. 1378, 1387 (D.D.C.1973).

9. *National Association of Neighborhood Health Centers v. Mathews,* 179 U.S.App.D.C. 135 at 142, 551 F.2d 321 at 338 (1976).

10. *Id.* at 143, 551 F.2d at 339.

1970 Act, as amended, was a sound measure which has, in the main, worked well.[11]

The Report further states:

> Another problem stems from the airport sponsors' inability to adequately plan on the availability of Federal support for a development project. This has caused waste and inefficiency, and has delayed needed development. To gain the most benefit from limited local and Federal funds, sponsors must be assured of receiving proper funding over a period of years for those particular projects which are important to the system.[12]

The allocation formula for large airports in § 1715(a) for FY's 1976–80 retains the provision of the 1970 Act, that limits the discretionary fund to one-third of the total. The mandatory allocation formula has been modified, but in a way that enhances the significance of enplanement.[13] This continuing commitment undergirds the soundness of a make-whole mandate to assure a grant of the funds that were due in FY 1975.

█ We have noted that Jacksonville did not sleep on its rights in making application or bringing suit. We have considered the question whether there was lack of diligence in failure to appeal the denial of the TRO. Had Jacksonville filed such an appeal., Government counsel would likely have responded that denial of a TRO is not appealable under 28 U.S.C. § 1291(a)(1). There is a doctrine that such denial is appealable where it would moot the case and prevent effective review.[14] Without deciding whether that appeal could have been maintained, we do not consider the failure to appeal a lack of diligence. The TRO was denied on June 27, 1975 (a Friday), and we do not think it sound to impose a burden of frantic exhaustion of appellate remedy at the last moment.[15]

The case is not moot. Our authority under 28 U.S.C. § 2106 to fashion an appellate remedy in the interest of justice, permits us to consider at this time whether the denial of the TRO was within the discretion of the district court. If we conclude that it was not, § 2106 permits the provision of the relief even at this late date that would have been available on the merits from the court if it had done what should have been done and provided a preservation remedy.

## II. ABUSE OF DISCRETION

█ We conclude that it was an abuse of discretion to deny plaintiff a TRO. The motion for the TRO was opposed by government counsel, and the special considerations of restraint supporting denial of an *ex parte* TRO are absent. The familiar factors affecting the grant of preliminary injunctive relief [16]—1) likelihood of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on the others' interests, and 4) the public interest—all point unequivocally in favor of granting such relief.

---

11. H.R.Rep. No. 594, 94th Cong., 1st Sess. 11 (1975), U.S.Code Cong. & Admin.News 1976, pp. 1600, 1601.

12. *Id.* at 14, U.S.Code Cong. & Admin.News 1976, p. 1604.

13. Enplanement is now the sole factor. The formula has been changed so as to favor smaller airports by decreasing the incremental grant as passenger volume increases. P.L. 94–353, 90 Stat. 874.

14. *United States v. Wood*, 295 F.2d 772, 777–78 (5th Cir. 1961), *cert. denied*, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962). 7 Moore's Federal Practice § 110.20[5] (1975); Wright & Miller, Federal Practice and Procedure: Civil § 2962, n.96 (1973).
 *Cf. State of Maine v. Fri*, 483 F.2d 439 (1st Cir. 1973) (grant of TRO the day before lapse not appealable); *State of Maine v. Fri*, 486 F.2d 713 (1st Cir. 1973) (same upheld after several months without deciding the question of lapse in the absence of an allotment).

15. Generally, as pointed out in Wright & Miller, *supra*, § 2962 at 628:
 > It should be noted that § 1292(a)(1) merely permits an interlocutory appeal; a party does not waive any rights by failing to seek immediate review . . . .. The only risk that a litigant incurs by waiting to appeal is that the issues involved may become moot.

16. *Virginia Petroleum Jobbers Association v. FPC*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958); *A Quaker Action Group v. Hickel*, 137 U.S.App.D.C. 176, 187, 421 F.2d 1111, 1116 (1969).

Jacksonville presented a strong likelihood of success on the merits, given the prior decision by Judge Parker in *Los Angeles.* Passing of the statutory deadline threatened irreparable injury given Judge Parker's view that recovery was impossible, and the case moot, thereafter. At least, the uncertainty in the law concerning the effect of the expiration of the FAA's authority to obligate established a substantial risk of irreparable harm looming with the passage of June 30. The holding of the *Los Angeles* case, in which there had been no stay, established the FAA's duty to obligate funds, to which the airport sponsors were entitled, conditionally on the outcome of the suit. Only a modest administrative burden would have been involved in requiring the FAA to take this preservative action, a burden devoid of expenditure and of impact on any other sponsor's right to its funds.

▨▨▨▨ Judge Parker relied on two factors in denying the TRO. He found the complaint "too vague" in that it did not specify which of the four projects on which plaintiff had applications pending the $292,-187 remaining of Jacksonville's allocation by the enplanement formula was to apply. The FAA informed Jacksonville that all four projects were eligible under the airport development program, but that none would be funded due to the operation of the FAA's priority system. Plaintiff's failure to specify which of the eligible projects was to receive the mandatory federal funding in no way beclouded the case or harmed the FAA. On the contrary, it offered the possibility of framing the TRO to allow the FAA to choose that allocation of the minimum federal funding among the proffered projects that it preferred, as most consonant with the public benefit in its view. The grant under a TRO would have been conditional, with opportunity for clarification or modification.

Judge Parker also relied on an "equitable" consideration which ensued from his finding that "plaintiff has received in dis- cretionary funds from the government over the past five years, more than twice the amount to which it would have been entitled under the mandatory enplanement formula." [17] That statistic is apparently erroneous. The statement of defendants' counsel at the TRO hearing on which it was based went:

> over the five-year period they [Jacksonville] have received almost double their emplanement [*sic*] entitlement in funds from the trust fund, that is, they have received grants which included emplanement [*sic*] entitlement monies, and discretionary funds, and state allotments [49 U.S.C. § 1715(a)(1)(A)] almost double of what they could have received over the five-year period if it all came out of the emplanement [*sic*] formula.[18]

This fact, that it was the total amount Jacksonville had received, discretionary *plus* mandatory, which was twice its enplanement entitlement, was confirmed for us by the government counsel at argument. While this mistake undercuts the "equitable" grounds relied on by the District Court, it is not the dominant consideration in our view of the equities. As we view them, plaintiff's equitable "deservedness" is not material to its entitlement, equitable or legal. This is not a case even remotely within the concept of lack of clean hands, or estoppel, or some conception that Jacksonville is "hogging" funds to the detriment of the public.

As we have developed in the companion case, No. 75–1965, *City of Los Angeles v. Adams*, 181 U.S.App.D.C. ——, 556 F.2d 40, Congress purposefully chose to divide the available funds: ⅔ mandatory, the other ⅓ to be distributed in the discretion of the FAA. One of the major purposes of the enplanement funds was to facilitate long term planning by sponsors, who would be assured of a minimum allotment based on their present passenger volume. While FAA stresses a public interest in efficiency,

---

17. *Jacksonville Port Authority v. Coleman*, Civ. No. 75–1039, Order (D.D.C. June 27, 1975).

18. Transcript of proceedings on the application for a TRO in *Jacksonville, supra* at 8, June 27, 1975.

there is an overriding public interest both in the particular facet determined by Congress, in the evenhanded distribution of the enplanement funds, and in the general importance of an agency's faithful adherence to its statutory mandate. These public interest considerations complete the factors which militate in favor of preliminary relief. The TRO should have been granted.

The district court may now order the FAA to grant to the plaintiff what it was entitled to under the statutory scheme, including the associated appropriations acts. The case is remanded to the district court for disposition together with No. 75–1965, *City of Los Angeles v. Adams*, 181 U.S. App.D.C. ——, 556 F.2d 40, decided this day. Plaintiff is to participate and be treated in accordance with our opinion of today in *Los Angeles.*

*So ordered.*