UNITED STATES of America, Plaintiff-Appellee,

v.

Lucero Alberto ESCALANTE, Defendant-Appellant.

No. 74–1075.

United States Court of Appeals, Ninth Circuit.

May 31, 1977.

Lucero Alberto Escalante, pro se.

John P. Knoll, Frank J. Ragen, Federal Defenders, Inc., San Diego, Cal., submitted on briefs for defendant-appellant.

Terry J. Knoepp, U. S. Atty., James W. Meyers, Asst. U. S. Atty., San Diego, Cal., on petition for rehearing, for plaintiff-appellee; Stephen W. Peterson, Asst. U. S. Atty., San Diego, Cal., on the brief.

Before BROWNING, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, and ANDERSON, Circuit Judges.

CHOY, Circuit Judge:

The question presented to us on rehearing en banc is whether *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), requires the suppression of evidence obtained in searches of private vehicles at permanent traffic checkpoints removed from the border or its functional equivalents, made by Border Patrol officers without consent or probable cause, after June 21, 1973, the date that *Almeida-Sanchez* was decided, and before May 9, 1974, when this court announced its decision in *United States v. Bowen*, 500 F.2d 960 (9th Cir. 1974), *aff'd*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). That such searches are unconstitutional is not at issue, for they were specifically so declared in *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), and previously had been so held by us in *Bowen*.[1] The issue is essentially to what extent *Ortiz* should be applied retroactively to searches prior to our announcement in *Bowen*.

The facts of the case are not in dispute. At approximately 1:05 on the morning of June 22, 1973, Border Patrol agents at the San Clemente immigration checkpoint on Interstate Route 5, approximately 66 miles from the Mexican border, stopped a sedan driven by appellant after one agent noticed a spare tire in the back seat of the vehicle. Questioned as to his citizenship, appellant replied that he was a United States citizen. He was then asked to open the trunk compartment, based upon the agent's suspicion that the vehicle was carrying illegal aliens. The search revealed 222 pounds of marijuana. The Government does not claim that there was probable cause for the search.[2]

Appellant moved to suppress the marijuana on the ground that it was evidence obtained in violation of the fourth amendment, and that motion was denied. He then waived trial by jury and proceeded to trial upon stipulated facts. Appellant was convicted of possessing marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and was sentenced to three years' custody followed by a special parole term of two years.

The precedents surrounding this case are complicated. In *Almeida-Sanchez*, the Su-

---

**1.** As discussed below, that portion of our decision in *Bowen* was later disavowed by the Supreme Court in affirming our judgment. 422 U.S. at 920–21, 95 S.Ct. 2569.

**2.** Quite the contrary, it phrases the issue in this case as: "Whether vehicles may be stopped and searched for illegal aliens *without probable cause* at fixed Immigration checkpoints." Appellee's Brief at 1 (emphasis added). For a case holding that the presence of a spare tire in the rear seat constitutes an adequate ground supporting a "reasonable suspicion" for a search, see *United States v. Wright*, 476 F.2d 1027 (5th Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973). There is no issue here as to consent raised by the parties. Appellant's Brief at 9–14. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

preme Court held unconstitutional a vehicle search by a roving patrol unit looking for illegal aliens based not on consent or probable cause but simply on the car's being located in the general vicinity of the border. The following year, we held in *Bowen,* upon en banc consideration, that *Almeida-Sanchez* applied as well to searches at fixed checkpoints, but also that *Almeida-Sanchez* should not be applied retroactively, thus ruling that evidence obtained in a 1971 search should not be excluded. Bound by *Bowen's* holding that *Almeida-Sanchez* applied directly to fixed checkpoint searches and faced with a post-*Almeida-Sanchez* search, the panel that originally heard this case reversed appellant's conviction. Later, however, the Supreme Court vacated that *Bowen* holding, stating:

> As the Court of Appeals correctly decided in this case that *Almeida-Sanchez* did not apply to a 1971 search, it should have refrained from considering whether our decision in that case applied to searches at checkpoints.

*Bowen v. United States,* 422 U.S. 916, 920–21, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641 (1975). Hence, far from being controlling authority, this court's "reaching out [in *Bowen* ] to decide that *Almeida-Sanchez* applied to checkpoint searches in a case that did not require decision of the issue" was error. *Id.* at 920, 95 S.Ct. at 2573.

On the same day that it issued *Bowen,* the Court announced its own determination in *Ortiz* that fixed checkpoint vehicle searches without consent or probable cause were improper under the fourth amendment. Appellant argues that, though our statement to that effect in *Bowen* no longer applies, *Ortiz* makes it clear that *Almeida-Sanchez* is the controlling authority for invalidating the fixed checkpoint searches. Thus even if the *Ortiz* rule does not extend to pre-*Almeida-Sanchez* checkpoint searches, since *Almeida-Sanchez* itself is not retroactive, *Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975),

appellant contends that it should apply to *all* such searches after *Almeida-Sanchez.*

In *Ortiz* the Court stated:

> We are not persuaded that the differences between roving patrols and traffic checkpoints justify dispensing in this case with the safeguards we required in *Almeida-Sanchez.* We therefore follow that decision and hold that at traffic checkpoints removed from the border and its functional equivalents, officers may not search private vehicles without consent or probable cause.

422 U.S. at 896–97, 95 S.Ct. at 2588.

Contrary to appellant, we believe that the Supreme Court's language in *Ortiz* neither indicates that the Court at any time previously had ruled on checkpoint searches, nor even implies that *Almeida-Sanchez* held checkpoint searches invalid. *Ortiz* does not state that *Almeida-Sanchez* decided the question, but that the Supreme Court *"follows" the principle* in *Almeida-Sanchez* and, *for the first time, "holds"* that *Almeida-Sanchez* applies to traffic checkpoints removed from the border and its functional equivalents. True, Mr. Justice Powell noted in his majority opinion that the Court would *at that time* follow *Almeida-Sanchez;* but nowhere did he suggest that *Almeida-Sanchez itself* established the illegality of searches at fixed checkpoints. Had Mr. Justice Powell thought that the issue had been decided in *Almeida-Sanchez,* he could have readily said so. Instead, he stated the Supreme Court would "follow that decision," and then he "holds" that such search was unlawful.

This interpretation is also supported, we believe, by the language used by Mr. Justice Powell in writing for the Court in *Bowen,* filed on the same day as *Ortiz* :

> We hold today in *United States v. Ortiz, ante,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623, that the Fourth Amendment, as interpreted in *Almeida-Sanchez,* forbids searching cars at traffic checkpoints in the absence of consent or probable cause.

422 U.S. at 918, 95 S.Ct. at 2571 (emphasis added). To this court, the Supreme Court's

language above can only mean one thing: *Almeida-Sanchez* did *not* hold that its principles applied to searches at traffic checkpoints, but *Ortiz did* so hold.

Given that the principle of *Almeida-Sanchez* has since been held in *Ortiz* to apply to checkpoint searches, the question arises whether evidence from searches conducted after June 21, 1973, but before our opinion in *Bowen,* on May 9, 1974, should be suppressed. In *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the Court observed:

> If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

*Id.* at 542, 95 S.Ct. at 2320.

Contrary to the dissent herein, we believe it is clear that prior to this court's decision in *Bowen,* there was no holding which gave law enforcement agencies adequate notice of the unconstitutionality of fixed checkpoint searches conducted without probable cause or consent. The Department of Justice and state law enforcement agencies were not aware that checkpoint searches were constitutionally impermissible. The dissent claims, "The Government was a party to dozens of cases in which the point was made." *Infra* at 975. But the dissent does not claim that any one case held, or even implied, that such searches were unconstitutional. Our own sharp division on that issue in *Bowen* —seven to six—reflects the closeness of the question and the lack of any clear holding or implication prior to the announcement in *Bowen* itself. We empha-

size that *Almeida-Sanchez* itself only concerned such searches conducted pursuant to roving patrols. That holding did not affect checkpoint searches. It is therefore clear that neither *Almeida-Sanchez,* nor, for that matter, any other decision, gave the Government, district court judges, or circuit court judges adequate notice that checkpoint searches were prohibited.[3]

Not until *Ortiz* and *Bowen* announced a new constitutional doctrine as to fixed checkpoint searches, and broadened the existing exclusionary rule (as *Almeida-Sanchez* had previously done as to roving patrols), were there any guidelines for arresting officers to follow. We are thus confronted with a retroactivity question which is similar to the one which the Supreme Court confronted in *Peltier.* Because the Government seized the evidence here reasonably, in good faith, and without knowledge that the search was unconstitutional, we hold that evidence from fixed checkpoint searches without consent or probable cause conducted prior to our holding in *Bowen* on May 9, 1974 need not be suppressed.

We therefore conclude that the conviction should be, and is, AFFIRMED.

HUFSTEDLER, Circuit Judge, with whom BROWNING, ELY and GOODWIN, Circuit Judges, join, dissenting:

No retroactivity issue is presented by *United States v. Ortiz* (1975) 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623. *Ortiz* held that *Almeida-Sanchez v. United States* (1973) 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596, applied to invalidate searches of private vehicles at traffic checkpoints removed from the border or its functional

---

**3.** We note that in another opinion filed on the same day as *Ortiz* and *Bowen,* the Court declined to apply the same probable cause standard to another variation of the roving patrol searches of *Almeida-Sanchez.* In *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Court held that a roving patrol could stop a motorist near the border for a brief inquiry into his residential status based upon the lesser standard of reasonable suspicion.

Most recently, in *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the Court held that routine stops for brief questioning could be made at reasonably located fixed checkpoints without any individualized suspicion that the particular vehicle contains illegal aliens.

As it was for *Ortiz, Almeida-Sanchez* was certainly a relevant precedent for these decisions, but it did not serve to dictate the result.

equivalents, made by border patrol officers without consent or probable cause, and made after June 21, 1973, the date that *Almeida-Sanchez* came down.[1] The majority opinion in this case reaches the startling and unprecedented conclusion that *Almeida-Sanchez* will be given limited prospective application by our court.

*Ortiz* announced no new constitutional doctrine. It did not "broaden" an existing exclusionary rule. (*See United States v. Peltier* (1975) 422 U.S. 531, 537, 95 S.Ct. 2313, 45 L.Ed.2d 374.) All that *Ortiz* did was to explain why checkpoint searches of this kind had been invalidated by *Almeida-Sanchez.*

The only difference between the checkpoint argument that the Government made and lost in *Ortiz* and the one it makes here is that its present argument seeks to justify an exception from *Almeida-Sanchez* for a lesser period of time than it sought in *Ortiz.* In *Ortiz,* it tried to except checkpoints indefinitely from *Almeida-Sanchez.* Here it seeks to escape *Almeida-Sanchez* from the date of that decision to the date that we decided *United States v. Bowen,* 9th Cir., 500 F.2d 960, May 9, 1974.

The Supreme Court in *Ortiz* rebuffed the Government's attempt. We had earlier rejected the contention in *Bowen.* Although our *Bowen* dictum was premature,[2] the Government cannot rely on *Bowen* to support an exception that *Bowen* itself refused. We rejected a similar contention in our panel opinion in *United States v. Juarez-Rodriguez* (9th Cir. 1974) 498 F.2d 7. As we stated in that opinion:

"Since the stop and search took place after June 21, 1973, the date on which the Supreme Court decided *Almeida-Sanchez v. United States, supra,* the non-retroactivity of that decision as applied to fix alien checkpoints . . . need not concern us [citations omitted]." (498 F.2d at 7–8.)

Even if we had not firmly rejected the Government's earlier attempts to limit the future impact of *Almeida-Sanchez,* the majority opinion's conclusion is unacceptable. A court of appeals cannot limit the prospective application of a constitutional rule laid down by the Supreme Court. If the majority's view were accepted, the Supreme Court's authority as the final arbiter of constitutional issues would be seriously eroded, if not destroyed. *Almeida-Sanchez* invalidated searches that were conducted under the very statute and the same administrative regulations upon which the Government now relies, and, to the extent that there was "continuous judicial approval" of searches thus conducted, the continuity was snapped when *Almeida-Sanchez* came down.

The meaning of the Court's language in *Peltier,* "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment" (*United States v. Peltier, su-*

---

1. *Ortiz* squarely held that *Almeida-Sanchez* invalidated these checkpoint searches that occurred after June 21, 1973: "We are not persuaded that the differences between roving patrols and traffic checkpoints justify dispensing in this case with the safeguards we required in *Almeida-Sanchez. We therefore follow that decision* and hold that at traffic checkpoints removed from the border or its functional equivalents, officers may not search private vehicles without consent or probable cause." (Emphasis added. 422 U.S. at 896, 95 S.Ct. at 2588.)

The majority's interpretation of *Ortiz* drains the meaning from the case. Moreover, the Supreme Court does not have to decide every application of a former decision on a constitutional principle before an earlier decision is entitled to prospective effect in every court in the land.

2. In *Bowen,* the majority of our court held that *Almeida-Sanchez* did not apply to searches that occurred before June 21, 1973, and, by *dictum,* stated that *Almeida-Sanchez* invalidated checkpoint searches, conducted without consent or probable cause after June 21, 1973. The Supreme Court affirmed the nonretroactivity of *Almeida-Sanchez* in *Bowen v. United States* (1975) 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641. The Court also reminded us that we should not have reached the question whether *Almeida-Sanchez* applied to fixed checkpoint searches because the search involved had occurred before June 21, 1973, and our majority had concluded that *Almeida-Sanchez* was not retroactive.

*pra,* 422 U.S. at 542, 95 S.Ct. at 2320) is not clear. But it is very difficult to believe that it means that the retrospectivity of a Supreme Court decision can turn upon the subjective state of a particular searching officer's mind or upon the degree to which he may be sophisticated in reading Supreme Court opinions. If it did, the applicability of Supreme Court decisions in cases involving searches would be hopelessly conflicting and unpredictable. They are troublesome enough when we are obliged to deal only with the differing states of judges' minds on this complex subject.

To the extent that knowledge of a law enforcement officer conducting a search has any bearing on a retrospectivity problem, the knowledge is that knowledge imputable to a hypothetical law enforcement officer within the system of which he is a part. A federal law enforcement officer must at least be "properly chargeable" with the knowledge of federal law enforcement agencies, including the Department of Justice. (*Cf. Giglio v. United States* (1972) 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104, *Barbee v. Warden, Maryland Penitentiary* (4th Cir. 1964) 331 F.2d 842, 846.) The Department of Justice was very much aware, after *Almeida-Sanchez,* if not before, that checkpoint searches were probably going the way of roving searches. The Government was a party to dozens of cases in which the point was made. Under these circumstances, the Government, acting through these border patrol agents, is in no position to claim any good faith reliance on the validity of these checkpoint searches.

I would reaffirm our prior decision reversing the conviction.

SNEED, Circuit Judge (dissenting):

I believe the Supreme Court has had ample opportunities to indicate that *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1976) was not to be applied retroactively to searches at fixed check points not based on probable cause occurring subsequent to June 21, 1973 but prior to June 30, 1975, the date *Ortiz* was decid-

ed. Notwithstanding these opportunities the Supreme Court has failed to so indicate.

One of these opportunities presented itself in *Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975) decided the same day as *Ortiz.* Involved in *Bowen* was a fixed check point search not based on probable cause. The Supreme Court held that we, the Ninth Circuit, correctly had decided "that *Almeida-Sanchez* did not apply to a 1971 search." No suggestion appears in the *Bowen* opinion that would validate check point searches not based on probable cause made subsequent to June 21, 1973, but prior to June 30, 1975, the date both *Ortiz* and *Bowen* were decided. Any such suggestion would have required reconciliation with *Ortiz* because the search in that case occurred on November 12, 1973.

Another opportunity to suggest that searches occurring between the dates of *Almeida-Sanchez* and *Ortiz* were valid arose in *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). In holding that check point stops were valid the Supreme Court adhered to *Ortiz* and gave no indication that it was inapplicable to searches subsequent to June 21, 1973.

Thus, I cannot avoid the firm belief that the Supreme Court has selected June 21, 1973 as its critical date. This being the case, I view the date on which this court decided *United States v. Bowen,* 500 F.2d 960 (9th Cir. 1974), *viz.* May 9, 1974, as irrelevant. This does not mean that issues presented by our *Bowen* could not be distinguished from those of *Almeida-Sanchez.* I thought they could then and remain of the same mind. The Supreme Court, however, in deciding *Ortiz* as it did, thought otherwise. Their view controls. If the date of May 9, 1974 is to be made memorable the Supreme Court should do it.