**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Arthur Fred BARELA,**
**Defendant-Appellant.**

**No. 74–1860.**

United States Court of Appeals,
Ninth Circuit.

March 9, 1978.

John J. Cleary, of Fed. Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Barton C. Sheela, III, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

## MEMORANDUM ON REHEARING

Before MERRILL and TRASK, Circuit Judges, and FERGUSON,* District Judge.

On October 24, 1973, during the early morning hours, Arthur Barela was stopped at the Border Patrol checkpoint located at San Clemente, California. He was coming from the south. There was no probable cause and no consent for the search of his car trunk that uncovered about 53 pounds of marijuana.

The search was after the date of *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), decided by the Supreme Court on June 21, 1973, but occurred at an established checkpoint and therefore was thought to be legal because *Almeida-Sanchez* applied to searches made by roving patrols only.

Barela was indicted for violation of 21 U.S.C. § 841(a)(1) and convicted at a court trial on March 8, 1974. He filed a timely appeal and on September 5, 1974, this court reversed his conviction.

Following the reversal, the government petitioned for rehearing. Initially, this was denied, but due to pending Supreme Court decisions, the government was granted extensions of time in which to file further petitions for rehearing. Such a petition for rehearing was granted on August 9, 1977.

In the meantime, the Supreme Court had decided *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 46 L.Ed.2d 623 (1975), holding that the Fourth Amendment forbids searches at highway traffic checkpoints in the absence of consent or probable cause.

This court has now decided in *United States v. Escalante*, 554 F.2d 970 (1977) (en banc), *cert. denied*, —— U.S. ——, 98 S.Ct. 192, 54 L.Ed.2d 136 (1977), that prior to the Supreme Court decision in *United States v. Bowen*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), and *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 46 L.Ed.2d 623 (1975), there was no decision which gave to law enforcement agencies adequate notice of the unconstitutionality of fixed checkpoint searches conducted without probable cause or consent. The seizure by officers at San Clemente on October 24, 1973, was without knowledge by the officers that checkpoint searches were constitutionally impermissible because those decisions had not yet been announced and checkpoint searches were routinely made by law enforcement agencies. *United States v. Escalante, supra*. They were therefore legal on October 24, 1973, under our then existing decisions, and our later decisions pursuant to *Bowen, supra*, and *Ortiz, supra*, in 1975, did not have retroactive effect. The conviction of Barela must therefore be affirmed.

Judgment AFFIRMED.

---

* Honorable Warren J. Ferguson, United States District Judge from the Central District of California, sitting by designation.

**1110**

FERGUSON, District Judge, dissenting:

I respectfully dissent.

In my opinion, this case presents serious questions of procedural irregularity and, more importantly, of fundamental fairness in the administration of justice. The key to this opinion lies in a review of the long and tortuous route which the case has traveled through the appellate process to reach its present posture.

I.

1. On November 7, 1973, the appellant Barela was indicted and charged with possession with intent to distribute a quantity of marijuana which had been found in his vehicle during a search at the San Clemente checkpoint on October 24, 1973. A motion to suppress was denied, and Barela was convicted. He was sentenced by the district court on April 15, 1974, and timely filed an appeal to this court.

2. On September 5, 1974, this panel filed an unpublished memorandum opinion reversing the conviction on the ground that the search of Barela's vehicle was illegal because it had not been based on founded suspicion or probable cause. In so holding, we properly relied on the state of the law at that time in accordance with the United States Supreme Court's decision in *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) and two recent Ninth Circuit cases, *United States v. Juarez-Rodriguez*, 498 F.2d 7 (1974) and *United States v. Bowen*, 500 F.2d 960 (1974).[1] The government's brief on appeal

conceded the applicability of *Bowen* and presented no argument on the merits other than a suggestion that the case be taken under submission pending review by the Supreme Court of the issues raised in *Bowen*. That suggestion was implicitly rejected by the issuance of our September 5 opinion.

3. On September 20, 1974, the government timely filed a petition for rehearing. In that petition, the government again conceded that under the current state of the law the court had been correct in sustaining the defendant's appeal. However, the argument was repeated that the case should be taken under submission pending Supreme Court review of the issues presented. It was noted that petitions for certiorari had been filed in *United States v. Bowen, supra,* and in *United States v. Ortiz*, an unpublished Ninth Circuit decision which had relied on *Bowen* to invalidate a post-*Almeida-Sanchez* fixed checkpoint search. This panel again rejected the government's suggestion and denied the petition for rehearing on October 31, 1974.

4. While the petition for rehearing was pending before this panel, the government filed the first of its motions to stay the mandate in this case as well as a number of other cases which had been decided on the basis of the holding in *Bowen*. The purpose of the requested stay was to await the Supreme Court's decisions in *Ortiz* and *Bowen*.[2] That motion was granted on October 21, 1974, and issuance of the mandate was stayed for a period of 70 days, until December 30, 1974.[3]

---

1. In *Almeida-Sanchez*, the Supreme Court had established for the first time the rule that roving patrol searches of vehicles in border areas were illegal absent a showing of probable cause. The Ninth Circuit's decision in *Bowen* held that *Almeida-Sanchez* applied to searches at fixed checkpoints as well, but that it would not be applied retroactively to invalidate a 1971 search. *Juarez-Rodriguez* followed *Bowen* and held that a checkpoint search conducted without founded suspicion or probable cause after the date of the decision in *Almeida-Sanchez* was illegal. (The subsequent history of *Juarez-Rodriguez* is discussed below.)

2. This motion, as well as the later motions regarding extensions and stays, were not re-

ferred to the respective panels on each of the cases in question. Instead, these motions were considered on a consolidated basis by the panel which had decided the earliest in the series of cases.

3. Rule 41(a) of the Federal Rules of Appellate Procedure provides that the mandate shall issue 21 days after the entry of judgment unless the time is shortened or enlarged by order. The timely filing of a petition for rehearing automatically stays issuance of the mandate until disposition of the petition. If the petition is denied, Rule 41 states that the mandate shall issue 7 days after entry of the order of denial, unless the time is enlarged by order. Therefore, had it not been for the seventy day stay

5. On January 2, 1975, the government filed a motion for an extension of time in which to file petitions for rehearing in the same series of post-*Bowen* cases, including this case, arguing again that those cases should not be finally resolved until the Supreme Court had decided *Bowen* and *Ortiz*. The motion was denied on January 15, 1975. One week later, the government moved for reconsideration of that denial and for an order staying the mandates in each of the cases for an additional 56 days. On January 23, 1975, that motion was granted only as to the stay of the mandates.[4]

6. On March 18, 1975, as the end of the 56-day stay approached, the government once again moved for an order extending the time in which to petition for rehearing in the post-*Bowen* cases. This time, instead of requesting an extension for a set period of time, the government sought permission to file for rehearing within 30 days after the Supreme Court filed its decisions in *Bowen* and *Ortiz*, which were then under submission following oral argument. In its motion, the government argued that such an extension of time would enable this court to maintain the cases in question on its active docket "in order to avoid the filing of unnecessary petitions for certiorari in all of the above cases."[5] On March 28,

1975, an order was filed granting an extension of time, but only for another 56 days until May 23, 1975. No further stay of the mandate was either requested or granted.[6]

The March 28 extension of time for rehearing is the last such order reflected on the court's docket for this case. No further stay of the mandate was sought by the government. The May 23 due date for filing a rehearing petition came and passed. Even if it could be said that the propriety of issuing the mandate before that date was questionable because of the repeated extensions of time for rehearing, it certainly should not have been delayed any further. Nevertheless, this case remained in limbo while the government awaited what it undoubtedly hoped would be a favorable Supreme Court decision on its claims that *Almeida-Sanchez* did not apply to fixed checkpoint searches.

7. Finally, on June 30, 1975, the Supreme Court announced its decisions in *United States v. Bowen*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641, and *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 46 L.Ed.2d 623. In *Bowen* the Court affirmed this circuit's holding regarding the nonretroactivity of *Almeida-Sanchez*, but disapproved the portion of the opinion

---

ordered in this case, the mandate would have issued on November 7, 1974, seven days after this panel denied the government's petition for rehearing.

4. A study of the applicable rules indicates that this second motion to stay the mandate was untimely. The prior stay had expired on December 30, and the mandate should have issued on that date. Although a timely petition for rehearing would result in an automatic stay (see note 3, *supra* ), the mere filing of a motion seeking an extension of time for rehearing or an order granting such an extension does not operate to delay issuance of the mandate. Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Jurisdiction § 3987 (1977). The logic and fairness of this rule are particularly compelling when, as in this case, the party seeking an extension has already had the opportunity to present a petition for rehearing which has been considered and denied. As will appear below, this was only the first of many times that the express requirement of Rule 41(a) that the mandate *"shall"* issue at the time prescribed was overlooked.

5. This argument is of some interest because, had a timely petition for certiorari been filed by the government, it is possible that this case would have been resolved much more favorably, and certainly more expeditiously, for Barela. Since the issues presented by the two cases were identical, the Supreme Court might well have decided this case at the same time as *Ortiz*, or by summary affirmance shortly thereafter. Instead, Mr. Barela is still entangled in the judicial process more than two years later while Mr. Ortiz, who for all relevant purposes was in a directly parallel position, has long since received the benefit of the Supreme Court's decision approving the reversal of his conviction. See note 7, *infra*.

. . . . .

6. Once again, the mandate should have issued when the last 56-day stay expired on March 20, 1975. The government was incorrect if it felt that the March 18 motion regarding rehearing would act to stay the mandate as well. See note 4, *supra.*

which had unnecessarily addressed the question of fixed checkpoint searches. In *Ortiz*, however, the Court decided that issue in conformity with this circuit's premature ruling in *Bowen*, and it affirmed the holding that the checkpoint search of Ortiz' vehicle was illegal. The Supreme Court specifically declined to consider the argument, raised belatedly by the government in its petition for certiorari that the search in *Ortiz* should be held to be lawful because it took place before the Ninth Circuit's decision in *Bowen* had indicated that the principles of *Almeida-Sanchez* would be applied to checkpoint searches. 422 U.S. at 898, 95 S.Ct. 2585. The *Ortiz* case was not remanded to this court for consideration of that question.[7] Thus, the Supreme Court cases on which the government relied in requesting the long series of delays in this case were finally decided, and all issues were resolved adversely to the government.

8. On July 14, 1975, Barela filed a motion for immediate issuance of the mandate. He certainly was entitled to make such a request. The government's last extension of time to petition for rehearing had run on May 23. The last stay of the mandate had expired even earlier, on March 20. The only possible reason for the prior delays had been eliminated by the recent Supreme Court decision in *Ortiz* which had confirmed that this panel's original reversal of Barela's conviction was correct. Once again, however, the mandate did not issue, and the docket does not reflect any action taken on appellant's motion.

9. On July 24, 1975, the government filed its second petition for rehearing. In that petition the government presented for the first time the argument that the search of Barela's car should be considered lawful because it took place after *Almeida-Sanchez* but before the Ninth Circuit decision in *Bowen*. This was the same question raised belatedly before the Supreme Court in *Ortiz*. It had not been presented to this panel at the time of the original appeal, nor in the first petition for rehearing; and, in fact, in those proceedings the government had conceded that *Bowen* would control this case.

In its second petition for rehearing, the government again asked that the final resolution of this case be delayed pending the decision in another case, *United States v. Juarez-Rodriguez*, 498 F.2d 7 (9th Cir. 1974).[8] A petition for rehearing en banc had been filed in that case, presenting the question of the "retroactivity"[9] of the Supreme Court's decision in *Ortiz*. No action was taken by this panel on the government's petition.

10. On November 16, 1976, this court's unpublished en banc opinion in *Juarez-Rodriguez* was issued. The court was evenly divided (six/six) on the retroactivity question. Because of the split, the district court's judgment of conviction in that case remained standing, but the government had once again failed to win the ruling which it needed to resolve this case in its favor. It was not until May 31, 1977, after another six months had passed without any action being taken in this case, that this court held in a sharply divided (six/five) en banc opinion that the Supreme Court's decision in *Ortiz* would not be applied retroactively to invalidate pre-1974 checkpoint searches. *United States v. Escalante*, 554 F.2d 970 (9th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 192, 54 L.Ed.2d 136 (1977).

11. On August 9, 1977, this panel issued an order indicating that it would entertain the government's July 24, 1975 petition for rehearing for the purpose of finally disposing of the case. This is the posture in which the matter of *United States v. Barela*

---

7. No further proceedings took place in *Ortiz* after the Supreme Court's affirmance. The mandate in that case was issued on August 8, 1975.

8. See note 1, *supra.*

9. I have some conceptual difficulty in applying traditional principles of retroactivity on a peti-

tion for rehearing in a case which, like *Juarez-Rodriguez* and like this case, was actually decided *before* the Supreme Court's decision in *Ortiz.* Nevertheless, that is the way in which the question has been framed by the government and addressed by this court. *See United States v. Escalante,* 554 F.2d 970 (9th Cir. 1977).

now stands before us once again, over three years after we once decided it in Barela's favor, and over four years after the filing of the indictment which initiated these proceedings.

## II.

On this rehearing the government concedes that:

"Prior to this court's holding in *United States v. Escalante* . . . it was thought that a search conducted at a checkpoint away from the border which occurred after the date of decision in *Almeida-Sanchez v. United States*, . ., was unlawful absent probable cause or consent."

There seems to be no question, therefore, that this panel's original decision to reverse appellant's conviction was correct when it was made and remained correct under the law of this circuit until May 31, 1977, when the opinion in *Escalante* was issued. The government asks, however, that we now withdraw our earlier decision, reverse ourselves, and affirm the conviction on the authority of *Escalante*. This, I am convinced, we cannot and should not do.

In my opinion, the matter now before the court should be treated as a request for recall of the mandate rather than as a petition for rehearing. The last stay of the mandate expired on March 20, 1975, and the latest possible date for the timely filing of a petition for rehearing was May 23, 1975. At that point, the unequivocal, mandatory language of Rule 41(a) of the Federal Rules of Appellate Procedure made issuance of the mandate a mere ministerial act. For some reason, that act was not performed. The matter may simply have been neglected or overlooked or, very possibly, become confused due to the procedural maneuvers which the government was pursuing in this and the other post-*Bowen* cases. Whatever the reason, it seems impossible to me that

we should simply disregard the fact that, but for this ministerial error, the mandate in this case would have issued long ago.

This is an appropriate case for application of the traditional equitable principle that the court may regard as done that which should have been done. 2 Pomeroy, Equity Jurisprudence § 363 (5th ed. 1941). *See Jacksonville Port Authority v. Adams,* 181 U.S.App.D.C. 175, 179, 556 F.2d 52, 56 (1977) ("In the interest of justice, the court may proceed as if action that should have been taken in the courthouse was timely taken.") *See also, United States ex rel. Schuster v. Vincent,* 524 F.2d 153 (2d Cir. 1975), in which the court cited this maxim in holding that, when an earlier mandate directing the state to conduct a timely parole hearing was not complied with, the court on a subsequent habeas corpus petition should treat the petitioner as if he had been released on parole at the proper time.

It is only fair and reasonable that we should adopt a similar approach in this case and treat the mandate as having issued promptly on May 23, 1975.[10] To do otherwise would require us to ignore completely the government's failure to follow the proper procedures for staying the mandate and would allow the government to take unfair advantage of our ministerial error in not issuing the mandate at the required time. All the equities here rest with the appellant. He cannot be charged with any responsibility for the errors or the delays which have occurred, and he should not be penalized because of them. Far from "sleeping on his rights," he attempted to extricate the case from its procedural muddle by filing his July 14, 1975 motion to compel issuance of the mandate; but that motion was ignored. The only proper course for us to follow at this point is to consider the matter now before us as if the mandate had been timely issued. The government's petition, therefore, must be viewed as a request for this court to recall

---

**10.** I use this date because I feel it is the clearest of several possible points at which the mandate should have issued. The earliest date would be December 30, 1974, at the expiration of the first stay. See note 4, *supra.* The latest date would be July 14, 1975, when appellant filed his motion for issuance of the mandate after the Supreme Court decisions in *Bowen* and *Ortiz* had been announced.

the mandate for the purpose of vacating and reconsidering our prior decision. *Cf. Alphin v. Henson,* 552 F.2d 1033 (4th Cir. 1977).[11]

Although it is not provided for or governed by any statute or rule of appellate procedure, the right of an appellate court to recall a mandate has long been recognized as an inherent power of the court. However, the recall of a mandate is an extraordinary remedy which is only granted in cases where it is necessary to serve the interests of justice. *Verrilli v. City of Concord,* 557 F.2d 664 (9th Cir. 1977); *Aerojet-General Corp. v. American Arbitration Ass'n,* 478 F.2d 248 (9th Cir. 1973); *Powers v. Bethlehem Steel Corp.,* 483 F.2d 963, 964–5 (1st Cir. 1973); *Gradsky v. United States,* 376 F.2d 993, 995 (5th Cir. 1967). *See generally,* Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Jurisdiction § 3938 (1977). The general principles governing recall are well stated in *Greater Boston Television Corp. v. F.C.C.,* 149 U.S.App.D.C. 322, 331, 463 F.2d 268, 277–8 (1971):

While there is a doctrine for recall of mandate broadly rooted in a showing of "good cause" and the need to "prevent injustice," the "power to recall mandates should be exercised sparingly" and is not to be availed of freely as a basis for granting rehearings out of time for the purpose of changing decisions even assuming the court becomes doubtful of the wisdom of the decision that has been entered and become final. . . . There must be special reason, "exceptional circumstances," in order to override the strong policy of repose, that there be an end to litigation. (citations omitted)

*See also, Collins v. City of Wichita,* 254 F.2d 837 (10th Cir. 1958).[12]

Far from presenting such an extraordinary situation where justice requires the court to allow a recall of the mandate, the procedural history of this case shows that the interests of justice weigh heavily against any reversal of our previous decision to overturn appellant's conviction. One primary consideration must be the simple fact of the length of time which has elapsed since we rendered that decision. The fun-

11. The facts in *Alphin,* an antitrust case, raised a procedural problem similar to the one presented here. In that case, the Court of Appeals affirmed a district court decision in the plaintiffs' favor, but denying them attorneys fees under then prevailing law. The mandate was stayed while the plaintiffs petitioned for certiorari. Their petition was denied on November 15, 1976, but notice of the denial was not received in the Court of Appeals until November 22. In the interim, on November 19, the plaintiffs had requested and obtained a further stay of the mandate and an extension of time in which to petition for rehearing.

On rehearing, the plaintiffs asked the court to apply a new statute regarding attorneys fees which had been enacted since the court's original decision. The defendants argued that, under the provisions of Rule 41(b), the court's mandate *should* have issued immediately upon denial of the petition for certiorari on November 15, and that the case should not be treated as still open for the purpose of applying the new law.

In reaching its decision that the new statute could properly be applied, the court in *Alphin* carefully examined the procedural history of the case as well as the wording of Rule 41. It concluded that the correct date for issuance of the mandate would have been November 22 rather than November 15, and that the stay

ordered on November 19 was therefore timely. Thus, the *Alphin* case represents clear precedent for the kind of close procedural analysis undertaken here. The distinguishing feature is simply that in *Alphin* the plaintiffs had fully complied with the proper procedures for staying the mandate, whereas, in this case, the government completely failed to do so.

12. In *Collins,* the plaintiffs had attacked the constitutionality of a Kansas statute but lost their case in the Court of Appeals. A year later in an unrelated case the Supreme Court held the Kansas statute unconstitutional. The plaintiffs then sought relief similar to a recall of the mandate through a motion for relief from judgment under Rule 60(b)(6), F.R.Civ.P. Although recognizing that in "extraordinary situations" such relief would be available, the court refused to reconsider its previous decision:

"Litigation must end some time, and the fact that a court may have made a mistake in the law when entering judgment, *or that there may have been a judicial change in the court's view of the law after its entry,* does not justify setting it aside." 254 F.2d at 839 (emphasis added)

*See also, Pierce v. Cook & Co., Inc.,* 518 F.2d 720, 722–3 (10th Cir. 1975).

damental importance of a speedy resolution of criminal proceedings is well recognized in our judicial system.[13] It is intolerable that, after such a long delay caused by the government's procedural maneuvering and our own failure properly to issue the mandate, the appellant should now be deprived of the benefit of our prior favorable resolution of his case. Certainly too much time has passed to make it either fair or just to reopen the proceedings.

In addition to the length of the delay, we must consider the fact that the question which is raised by the government in the present petition was not presented to this court in connection with either the original appeal or the first petition for rehearing. Instead, the government made it clear in those proceedings that its theory of the case was that *Almeida-Sanchez* did not apply to fixed-checkpoint searches. Now that that issue has been decided adversely by the Supreme Court in *Ortiz,* the government seeks to raise an entirely different theory to support its position. Even viewing the present proceeding as a simple petition for rehearing, we would be justified in declining to consider a question so belatedly raised. *See United States v. Klotz,* 503 F.2d 1056 (8th Cir. 1974); *United States v. Sutherland,* 428 F.2d 1152, 1158 (5th Cir. 1970). *See also United States v. Oritz, supra,* 422 U.S. at 898, 95 S.Ct. 2585 (declining to review the same question on certiorari where it had not been presented to this court on appeal). In light of the special procedural problems which require that we consider the second petition for rehearing as a motion to recall the mandate, the propriety of refusing to allow the government to raise a new issue is even clearer.

Finally, the most persuasive factor in my decision to vote against the reversal of our previous ruling is the basic injustice that results from applying this court's 1977 decision in *Excalante* to this case, which had been decided more than two and one-half years earlier. During that period, the government tried first to obtain a Supreme Court ruling which would reverse this panel and sustain the appellant's conviction. When that attempt failed and the law had clearly been settled in appellant's favor, the government took advantage of further delays in the disposition of this case to seek a circuit decision on a different basis, but which would have the same effect. That decision did not come for another two years. It seems to me to be offensive to the most fundamental notions of fairness that the appellant should be deprived of the benefit of an appellate court decision, indisputably correct when rendered, simply because of a procedurally improper delay and a ministerial error by this court. Therefore, I must respectfully dissent from the majority's conclusion that the rule established in *United States v. Escalante* requires us to grant the government's petition and to reinstate the appellant's conviction. To the contrary, I am convinced that justice requires us to do otherwise.

I would deny the petition for rehearing and order that the mandate issue forthwith.

---

13. The Sixth Amendment to the Constitution guarantees the right to a speedy trial, and the due process clause of the Fifth Amendment has been held to protect the rights of a defendant against undue delay in the prosecution of criminal charges. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Simi- lar concern is expressed in such legislative and judicial action as the adoption of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174, and this court's own provisions for expediting simple criminal appeals. Rule 20, Rules of Procedure for the Ninth Circuit.