In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2785

HABITAT EDUCATION CENTER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES FOREST SERVICE, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-C-627—**Aaron E. Goodstein**, *Magistrate Judge*.

ARGUED APRIL 14, 2010—DECIDED MAY 27, 2010

Before POSNER, RIPPLE, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Habitat Education Center, a nonprofit enterprise dedicated to promoting environmental quality, sued the forest service to obtain judicial review of the service's decision to allow several thousand acres of a national forest in Wisconsin to be logged. (There are other parties on both sides of the case, but, with one exception mentioned later, they can be ignored.) Habitat asked for and was granted a preliminary injunction

against the issuance of the permit to the company that had been the high bidder for the logging contract. The judge required Habitat to post a $10,000 injunction bond, pursuant to Rule 65(c) of the civil rules, which provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." There is an exception if the applicant for the preliminary injunction is a federal agency or officer but it has no application to this case.

Habitat asked the judge to reconsider the bond order. It argued that a nonprofit enterprise—at least one devoted to so great and general a good as the protection of the environment—should not have to post an injunction bond. The judge declined to rescind or modify the order. Neither it nor the judge's refusal to rescind or modify it was immediately appealable. True, an order *denying* an injunction bond, a supersedeas bond (as security for a stay of execution of judgment), or any other request for security to protect a litigant, is immediately appealable. E.g., *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *In re Carlson*, 224 F.3d 716, 718 (7th Cir. 2000); *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 786 F.2d 794, 795-96 (7th Cir. 1986); *In re UNR Industries, Inc.*, 725 F.2d 1111, 1117 (7th Cir. 1984); *Atlantic Fertilizer & Chemical Corp. v. Italmare, S.p.A.*, 117 F.3d 266 (5th Cir. 1997). Such an order is a classic "collateral order," which is to say an order belonging to "that small class [of orders] which finally

determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 U.S. at 546.

But orders to post an injunction bond—and that is the order challenged by this appeal—or other security generally are not appealable immediately, *In re Carlson, supra*; *Caribbean Trading & Fidelity Corp. v. Nigerian National Petroleum Corp.*, 948 F.2d 111, 114 (2d Cir. 1991); *Hitachi Zosen Clearing, Inc. v. Tek-Matik, Inc.*, 846 F.2d 27, 28-29 (6th Cir. 1988); *Trustees of Hospital Mortgage Group v. Compania Aseguradora Interamericana S. A. Panama*, 672 F.2d 250 (1st Cir. 1982) (per curiam), because they are less likely to inflict irreparable harm. *Swift & Co. Packers v. Compania Del Caribe*, 339 U.S. 684, 689 (1950); *In re Carlson, supra*, 224 F.3d at 718. Indeed, "when setting the amount of security, district courts should err on the high side. If the district judge had set the bond at $50 million, as Abbott requested, this would not have *entitled* Abbott to that sum; Abbott still would have had to prove its loss, converting the 'soft' numbers to hard ones. An error in setting the bond too high thus is not serious. (The fee for a solvent firm such as Mead Johnson or its parent Bristol-Myers Squibb Co. to post a bond, a standby letter of credit, or equivalent security is a very small fraction of the sum involved.) . . . [A]n error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott*

*Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000) (emphasis in original).

There is however an exception for a case in which the bond is both higher than necessary and beyond the plaintiff's financial capacity, and thus inflicts irreparable harm without justification. See *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322 (9th Cir. 1975); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). In such a case the bond order meets the criteria for a collateral order. But not in this case.

Eventually the judge dissolved the preliminary injunction that he had granted to Habitat, granted the forest service's motion for summary judgment, and dismissed the suit. Habitat appealed the dismissal—it is the appeal before us—and generally when a final judgment or other order is appealed, the appellant can challenge any interlocutory ruling that adversely affects him. *In re Salem*, 465 F.3d 767, 773-75 (7th Cir. 2006); *Kurowski v. Krajewski*, 848 F.2d 767, 772-73 (7th Cir. 1988); *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 57 and n. 15 (D.C. Cir. 1977); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2962, pp. 433-34 (2d ed. 1995). The order to post an injunction bond (or refuse to rescind the order) was such a ruling.

Even when an interlocutory order is immediately appealable, the party adversely affected by it can wait and challenge it later, on appeal from the final judgment, provided of course that the order hasn't become moot in the meantime. *Kurowski v. Krajewski*, *supra*, 848 F.2d at 772-73. Far from becoming moot, the order

making Habitat post a bond is likely to bite harder than when it was entered. When the security takes the form of a surety bond, the initial cost is the surety's fee. The bonding company promises to pay any damages for losses caused by the injunction should the party who got the injunction and thus caused the loss (in this case, Habitat) fail to pay the damages—in such a case, indeed, the injured party can proceed against the surety directly. Fed. R. Civ. P. 65.1. Habitat didn't use a surety; it deposited $10,000 with the court. The cost to Habitat was thus the time value of that amount. Had the preliminary injunction not been vacated, that would have been the only cost to Habitat. But now it faces the possibility of having to pay damages to the forest service, though only up to the bond limit of $10,000. *Coyne-Delany Co. v. Capital Development Board*, 717 F.2d 385, 390-94 (7th Cir. 1983); *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 20-21 (1st Cir. 2007); *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, 335 F.3d 235, 239-40 (3d Cir. 2003); *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036-37 (9th Cir. 1994); *National Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134-35 (D.C. Cir. 1992).

It could be argued that unless and until damages are assessed, Habitat has incurred no loss and therefore lacks standing to appeal. But it *has* incurred a loss—a loss of the use of $10,000. Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money. Suppose no damages are ever assessed against Habitat and so eventually the court returns the $10,000 that it is holding; there would be no

procedural vehicle to enable Habitat to recover the loss of the time value of its money. Therefore it had standing to challenge the bond order on appeal from the final judgment. See *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, *supra*, 335 F.3d at 239.

A genuine oddity about the appeal is that it is from a judgment—namely the dismissal of the suit—that the appellant is not challenging, but only from an interlocutory order. A cleaner approach would have been for Habitat to designate its appeal as an appeal from the bond order. For it became final and therefore appealable when the suit was dismissed, since at that point the order was no longer interlocutory. But the oddity of Habitat's approach has no jurisdictional significance.

On to the merits of Habitat's challenge to the bond. The winning bidder had bid $55,000. The preliminary injunction, which was entered on January 13, 2009, prevented the logging from being undertaken for at least a year, because logging in this forest is done only in winter, when the ground is hard. The injunction was dissolved on May 12, 2009, but we are told without contradiction that the rules of the forest service require that the project be rebid. An affidavit submitted by the forest service in the district court stated that the project would be rebid in "early October 2009," but as far as we're able to determine, as of the date of oral argument (April 14 of this year) it had not yet been rebid.

We are not persuaded by Habitat's argument that nonprofit entities, at least those devoted to public goods of great social value, such as the protection of the en-

vironment, should be exempted from having to post injunction bonds. The argument flies in the face of Rule 65(c), which not only contains no such exception but also states flatly that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The language of Rule 65(c) was even more emphatic before changed in 2007; it read: "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The committee notes to the 2007 revision make clear that no substantive change was intended— only clarification, and consistency in style and terminology.

In seeming contradiction of the rule, a number of cases allow a district court to waive the requirement of an injunction bond. In some of these cases the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction. There is no reason to require a bond in such a case—and *cessante ratione legis cessat ipsa lex* (when the reason for a law leaves off, the law leaves off). See, e.g., *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882-83 (9th Cir. 2003); *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990); 11A Wright

et al., *supra*, § 2954, pp. 292-93. And in another class of cases a bond that would give the opposing party absolute security against incurring any loss from the injunction would exceed the applicant's ability to pay and the district court balances (often implicitly) the relative cost to the opponent of a smaller bond against the cost to the applicant of having to do without a preliminary injunction that he may need desperately. See, e.g., *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir. 1977); *Temple University v. White*, 941 F.2d 201, 220 (3d Cir. 1991); *People ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985); *City of Atlanta v. Metropolitan Atlanta Rapid Transit Authority*, 636 F.2d 1084, 1094 (5th Cir. 1981). This case fits neither category. The forest service may lose money as a result of the now-dissolved preliminary injunction (in fact it's bound to lose at least a little, as we'll see), and Habitat admits that posting the $10,000 bond caused it no hardship, let alone deterred it from asking for the injunction—it might have been able to buy a surety bond for as little as $300. See CourtBondNet, "Bonds for Judicial Proceedings," www.courtbondnet.com/judicial.html (visited May 3, 2010). And while Habitat hasn't told us what its total assets or revenues are, one of its coplaintiffs has annual revenues of some $7 million. Environmental Law & Policy Center, "ELPC Is Financially Sound and Well-Managed," elpc.org/elpcs-financial-status (visited May 3, 2010).

Turning to Habitat's alternative ground for canceling or reducing the bond, we ask whether $10,000 is excessive in relation to the forest service's likely loss

from a logging delay of a year. Money has time value, as we've said. If you part with money, you lose liquidity (the instant ability to deploy cash) and in addition incur a risk of never getting your money back. So you demand compensation for parting with money, and that compensation normally takes the form of interest at a specified rate, though other factors besides loss of liquidity and risk of default may influence the rate, such as expected inflation. Businesses, individuals, and doubtless even federal agencies (considering the staggering federal budget deficit—$1.4 trillion in 2009 and likely to be as great or greater this year) value having cash now rather than a promise, however reliable, of cash later.

Habitat argues that a one-year delay in receiving $55,000 is costless to the forest service because the inflation rate was zero (or close to it) in 2009 and is likely to remain very low this year (remember that we don't know whether the forest service has rebid the logging contract yet). But the inflation rate is not the only influence on interest rates. The Federal Reserve has pushed short-term interest rates down very low of late by flooding banks and other lenders with trillions of dollars to lend and invest, but has not by doing so eliminated the time value of money. $55,000 would be worth more today than a year ago only if there were deflation—that is, only if a given number of dollars would buy more goods and services today than a year ago—and although inflation has been very mild since the economic crisis hit, it has not been negative.

Still, Habitat has a point when it says that $10,000 is an extravagant estimate of the loss in time value from defer-

ring the receipt of $55,000 for one year; it implies an annual interest rate of 18.2 percent ($10,000 ÷ $55,000). But an injunction bond is intended to secure against possible as well as certain costs—recall the passage we quoted from the opinion in *Mead Johnson*. There is some risk that the rebidding of the logging contract will not yield $55,000. Maybe not a big risk; for January 2009 was near the nadir of the economic crisis; housing construction was greatly depressed; since then lumber prices have risen. Tony C. Dreibus, "Lumber Rises to Highest Price Since 2006 on Economic Outlook," *Bloomberg Business Week* (Apr. 16, 2010), www.businessweek.com/news/2010-04-16/lumber-jumps-to-highest-price-since-2006-on-outlook-for-demand.html (visited Apr. 27, 2010); Liam Pleven and Lester Alrich, "High Lumber Prices Threaten Housing Market," *Wall Street Journal* (Feb. 16 2010), online.wsj.com/article/SB10001424052748703562404575067750815490316.html (visited Apr. 27, 2010). But a risk is a risk; all that we can know with certainty at this time is that the judge *may* decide not to award damages. Actually that's unlikely, because the bidding process is not costless, although the forest service reckons the cost of rebidding the logging contract at a modest $2,350. The service has already asked the magistrate judge to award this amount in damages without awaiting the outcome of the appeal or the determination of the other damages, if any, inflicted by the injunction bond. He decided to wait until the appeal was resolved and any additional damages determined. This delay underscores our earlier remarks about Habitat's loss of the time value of its $10,000, and this is further evidence for the timeliness of

its request that we order the money refunded to it forthwith.

But we won't do that because we think the bond was proper. And we especially wish to emphasize our rejection of the rule proposed by Habitat that nonprofit entities should be exempt from having to post injunction bonds, or a slightly narrower rule that would pick and choose among them on the basis of likely contribution to the overall public welfare. Preliminary injunctions, because issued before a full adjudication, often turn out to have been issued in error, and when that happens the costs imposed on the party against whom the injunction ran are costs incurred by an innocent person (at least innocent in the preliminary-injunction phase of the litigation). The innocent may be a private firm or a government agency or a hapless individual (or even another nonprofit), but that doesn't make it or him or her unworthy of the law's protection. The costs of government are borne ultimately by taxpayers (or by victims of inflation when government finds it infeasible or politically undesirable to raise revenues by outright taxation and instead reduces its expenses by paying them in ever-cheaper money), and the greater the expenses of the forest service the higher the tax burden is likely to be. Obviously, dissolving this injunction bond would not materially affect the budget of the forest service. But the principle that nonprofit entities should pay their way, reimbursing the losses incurred by entities whose operations the nonprofits impede by obtaining preliminary injunctions later dissolved, is general. And remember that Habitat's appeal does not

challenge the judge's dissolution of the preliminary injunction that he had issued.

Nonprofit entities such as Habitat have the benefit of exemption from federal income tax, and often from local property taxes, as well as the indirect tax subsidy provided to nonprofits by the charitable deduction from personal income tax. Need the courts grant them an exemption from Rule 65(c) as well?

And some respect should be paid to the language of the rule, especially when we consider that a rule of civil procedure can be amended much more easily than a statute. The language of Rule 65(c) provides no support for a blanket exemption of nonprofit entities; and in this regard notice also the express exemption of the federal government from having to post a bond, which suggests—what is anyway obvious—that the framers of the rules know how to make exceptions to them. And cause litigation by nonprofits is not a new phenomenon of which the framers of the rule and of its amendments would have been unaware.

In deference to the written word, Habitat suggested that it would not have objected to the district court's imposing a nominal bond, say $200—but in response to some pesky questioning from the bench indicated that by nominal it meant any amount more than zero and less than significant, so a bond of $1 would in its view comply with the statute. Of course the bond would cost much more to administer than $1; and what would that expenditure procure? Absolutely nothing.

It is true that nominal damages are sometimes awarded, see, e.g., *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (due process violation); *Columbia Wire Co. v. Kokomo Steel & Wire Co.*, 194 F. 108 (7th Cir. 1911) (patent infringement); *Boule v. Hutton*, 328 F.3d 84, 94-95 (2d Cir. 2003) (defamation), and often when that happens—because they really are nominal—the plaintiff doesn't bother to collect them. They may be little better than a fossil remnant of an earlier legal system, when it was thought that to say such things as that "from my earliest reading, I have considered it laid up among the very elements of the common law, that, wherever there is a wrong, there is a remedy to redress it; and that every injury imports damage in the nature of it; and, if no other damage is established, the party injured is entitled to a verdict for nominal damages," *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 507 (C.C. Me. 1838) (Story, J.), was to say something, rather than to talk in a circle.

It is true that awarding nominal damages is a way of communicating an important result in many cases: that the plaintiff proved a violation of his rights but was unable to prove damages as a consequence of the violation. But in lieu of awarding nominal damages (and puzzling laypersons by doing so), the court could just say: the plaintiff proved a violation of his rights, but the violation caused no monetizable injury. We read in a modern case that "nominal damages can be a practical and effective remedy, both in constitutional and in other civil cases, where there is a genuine case or controversy between the parties but the injury to the plaintiff is not monetary and there is no basis for compensatory damages." *Utah Animal Rights Coalition v. Salt Lake City*

*Corp.*, 371 F.3d 1248, 1264 (10th Cir. 2004) (concurring opinion). But why is that more "practical and effective" than just declaring that the plaintiff proved a violation but could not establish damages?

The award of nominal damages is especially common in breach of contract cases, see, e.g., *Shepard v. State Automobile Mutual Ins. Co.*, 463 F.3d 742, 748-49 (7th Cir. 2006); *Movitz v. First National Bank*, 148 F.3d 760, 765 (7th Cir. 1998); *Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890-91 (7th Cir. 1995); E. Allan Farnsworth, *Contracts* § 12.8, p. 757 (4th ed. 2004), where the award signifies that there was indeed a breach. That determination may be significant in future dealings between the parties. Again, the court could just say, as in a declaratory-judgment proceeding, that the plaintiff had proved a breach. But however that may be, ordering the posting of a nominal injunction bond has less to recommend it than awarding nominal damages, because an order to post a nominal bond has no communicative value.

We note finally that if and when Habitat is ordered to pay damages based on the injunction bond, that award will be separately appealable since there is no longer an appealable judgment to which such an order would be interlocutory. *Orion Sales, Inc. v. Emerson Radio Corp.*, 148 F.3d 840, 842-43 (7th Cir. 1998); *Henco, Inc. v. Brown*, 904 F.2d 11, 13 (7th Cir. 1990); see *Buddy Systems, Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1169 (9th Cir. 1976).

AFFIRMED.