MARTIN, Circuit Judge,
dissenting:
Kawa Orthodontics, LLP (Kawa) filed suit in federal court challenging the Treasury Department’s decision to delay enforcement of the “employer mandate” provisions of the Patient Protection and Affordable Care Act (ACA). Before us is the narrow question of whether Kawa has Article III standing to challenge that delay. Because I believe that Kawa has standing, I respectfully dissent.
I.
The ACA requires employers with more than fifty full-time employees to provide minimum essential health-insurance coverage to its employees and their dependents or pay a tax penalty. 26 U.S.C. § 4980H. According to the statute, these provisions (known as the “employer mandate”) were scheduled to take effect on January 1, 2014. Pub.L. No. 111-148, § 1513(d), 124 Stat. 119, 256. However, on July 2, 2013, the Treasury Department announced a one-year delay in enforcement of the employer mandate. See IRS Notice 2013-45, Transition Relief for 2014 Under §§ 6055 (§ 6055 Information Reporting), 6056 (§ 6056 Information Reporting) and 4980H (Employer Shared Responsibility Provisions), IRB 2013-31, July 29, 2013, available at http://www.irs.gov/irb/2013-31IRB/ar08.html. That delay has since been extended until the end of 2015 for employers with between fifty and ninety-nine employees. See 79 Fed.Reg. 8544 (Feb. 12, 2014).
In October 2013, Kawa filed suit in federal district court challenging Treasury’s delay in enforcing the employer mandate. Kawa has more than fifty full-time employees and would therefore be subject to the provision. According to the complaint, prior to the announcement of delayed enforcement, Kawa incurred certain costs “including money spent on legal fees ... in order to determine what options and obligations it ha[d] under the ‘employer mandate’ and how the coverage Plaintiff [then] offer[ed] to its employees w[ould] be affected by the mandate.” Kawa alleged that had it known the employer mandate would not be enforced until well after January 1, 2014, it “would not have expended its time and resources and incurred these anticipatory costs in 2013 ... but instead would have spent its time, resources, and money on other priorities.” In short, Kawa alleged injury because it “los[t] some, if not all, of the value of the time and resources it expended in 2013 in anticipation of the mandate going into effect on January 1, 2014.” Kawa sought declarato *249 ry and injunctive relief under the Administrative Procedure Act (APA) setting aside the delay of the employer mandate. On January 13, 2014, the District Court dismissed Kawa’s suit for lack of subject-matter jurisdiction, holding that Kawa lacked Article III standing. Kawa appeals that holding here.
II.
In order to show standing, a plaintiff “must allege personal injury fairly traceable to the defendant’s allegedly unlawful conduct and likely to be redressed by the requested relief.” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), abrogated on other grounds by Lexmark Int’l, Inc. v. Static Control Components, Inc., — U.S. -, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). The “party invoking federal jurisdiction bears the burden of establishing these elements.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). “We review issues of standing de novo.” Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1264 (11th Cir.2011). After careful consideration, I believe that Kawa has alleged facts sufficient to meet each part of the three-pronged standing test.
A.
First, Kawa has shown that it has sustained an injury as a result of the government’s decision to delay enforcement of the employer mandate. It spent money on compliance costs two years earlier than necessary, and therefore lost two years of interest on those expenditures. Under basic rules of accounting, “[a] dollar today is worth more than a dollar tomorrow.” Atlantic Mut. Ins. Co. v. Comm’r, 523 U.S. 382, 384,118 S.Ct. 1413, 1415,140 L.Ed.2d 542 (1998) (quoting D. Herwitz & M. Barrett, Accounting for Lawyers 221 (2d ed.1997)); see also Till v. SCS Credit Corp., 541 U.S. 465, 487, 124 S.Ct. 1951, 1966, 158 L.Ed.2d 787 (2004) (Thomas, J., concurring in the judgment) (“$4,000 today is worth more than $4,000 to be received 17 months from today because if received today, the $4,000 can be invested to start earning interest immediately.” (footnote omitted)). This is the “time value of money.” See Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 459 (7th Cir.2010). Here, had Kawa spent money to ensure its compliance with the employer mandate in 2015 instead of 2013, it could have earned an additional two years of interest on that money. Or, instead of earning interest, Kawa could have invested that money in other endeavors to generate two years’ worth of added profits to the company. Cf. Arda v. Florida Sec’y of State, 746 F.3d 1273, 1279 (11th Cir.2014) (“Under the diversion-of-resources theory, an organization has standing to sue when a defendant’s illegal acts impair the organization’s ability to engage in its own projects by forcing the organization to divert resources in response.”).[1]
This loss of the time value of Kawa’s money is a sufficient injury to meet the requirements of Article III standing. Recently, in Habitat Education Center, the Seventh Circuit addressed a similar question and held that the plaintiff had standing to challenge a deposit of $10,000 with the court, even though it was possible the *250 plaintiff would eventually receive the full amount of money back if it won the case. Id. at 457. The Seventh Circuit reasoned:
It could be argued that unless and until damages are assessed, Habitat has incurred no loss and therefore lacks standing to appeal. But it has incurred a loss — a loss of the use of $10,000. Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money. Suppose no damages are ever assessed against Habitat and so eventually the court returns the $10,000 that it is holding; there would be no procedural vehicle to enable Habitat to recover the loss of the time value of its money. Therefore it had standing to challenge the bond order on appeal from the final judgment.

Id.

The very same can be said here. Kawa alleged that it “spent [money] on legal fees ... in order to determine what options and obligations it ha[d] under the [ACA].” And by paying lawyers to ensure that its health insurance program complied with the ACA in 2013 rather than 2015, Kawa lost two years of interest on those expenditures. Given that the Supreme Court has found an injury as small as “a $5 fine and costs” and a “$1.50 poll tax” sufficient to show standing, United States v. SCRAP, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973), I understand the lost interest on thousands of dollars of legal payments that were prematurely spent to meet the injury prong of standing. See also F. Andrew Hessick, Probabilistic Standing, 106 Nw. U.L.Rev. 55, 67-68 (2012) (“[Standing treats identically a plaintiff who alleges only 1$ in harm and a plaintiff who alleges a $100,000 injury; both have a personal stake warranting invocation of the courts.”).
Of course, I agree that the information Kawa obtained as a result of its legal expenditures will also be valuable in 2015 when the employer mandate goes into effect. However, looking only to the utility of Kawa’s legal expenditures ignores the fact that Kawa could have obtained that information two years later, and benefited from the use of interest earned on that money had it known of the delay. Monetary loss — no matter how small — has been recognized as a cognizable injury for standing purposes. I would hold that Kawa has alleged facts that show an injury sufficient to demonstrate Article III standing.
B.
Second, Kawa has shown that its “injury [is] fairly traceable to the defendant’s allegedly unlawful conduct,” Allen, 468 U.S. at 751, 104 S.Ct. at 3324. The government argues that Kawa’s asserted injury “did not result from the actions of the defendants in this case,” but rather “from the enactment of the statute itself.” Were the alleged injury the fact that Kawa spent the money on compliance costs at all, the government would be correct that the statutory mandate — not the delay — brought about the need to make such expenditures. But since the injury is the lost' time value of Kawa’s expenditures, not the expenditures themselves, the only reason for that loss is the delay in enforcement. I would hold that Kawa has alleged causation sufficient to demonstrate Article III standing.
C.
Third, Kawa has shown that its injury is “likely to- be redressed by the requested relief.” Allen, 468 U.S. at 751, 104 S.Ct. at 3324. When determining redressibility, we simply inquire as to whether the plaintiff has shown that it would gain some relief in the event of a favorable ruling. See Hollywood Mobile Estates, 641 F.3d at 1266.
*251 Here, Kawa sought relief under the APA for injunctive and declaratory relief — not monetary damages. I agree with the District Court that “[n]either a declaration that Defendants acted unlawfully nor an injunction requiring the immediate implementation of the employer mandate would compensate Plaintiff for its time and resources expended in 2013.” However, compensation is not the only means of redress. Kawa may not be able to obtain redress for the interest it has lost between January 1, 2014, and now. But if a court required the government to enforce the employer mandate going forward, that decision would end the continued injury Kawa faces from each new day of unearned interest on the money it prematurely used for those legal expenditures. In other words, it would not have unnecessarily spent the money before it needed to. For this reason, I would hold that Kawa has met the redressibility prong for Article III standing.
III.
The majority says that because “Kawa’s complaint does not mention the word ‘interest,’ let alone allege that Kawa had specific plans to invest its money into an interest-bearing asset ... [its] lost-interest argument is waived.” But I am mindful that “[w]hen the defendant challenges standing via a motion to dismiss, both trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.” Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir.1993) (quotation marks omitted). We may find standing “based on the facts alleged in the complaint.” Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir.2001) (emphasis added). The plaintiffs’ complaint here clearly says that “Plaintiff would not have expended its time and resources and incurred these anticipatory costs in 2018 if the mandate had not been schedule to take effect until 2015, but instead would have spent its time, resources, and money on other priorities.” The complaint also states that the delay in enforcement of the “employer mandate” has “caus[ed] Plaintiff to lose some ... of the value of the time and resources it expended in 2013.” Applying the well-known principle of “the time value of money” means that spending money on other priorities in 2013 — and reaping the benefits of those investments between 2013 and 2015 — would financially benefit Kawa even if it eventually expends money in 2015 to comply with the mandate. Construing Kawa’s complaint liberally, I understand Kawa to have easily alleged facts sufficient to demonstrate Article III standing in its complaint.[2]
Of course, my view on the issue of standing has nothing to do with the merits of Kawa’s complaint challenging the employer mandate’s delayed enforcement under the APA. In fact, any discussion of the merits here would be inappropriate. See, e.g., Mulhall v. UNITE HERE Local 855, 618 F.3d 1279, 1294 (11th Cir.2010) (holding, after we found standing following a district court’s dismissal for lack of subject *252 matter jurisdiction, that “[t]he merits will be for the district court to decide on remand”). However, I would hold that Kawa has alleged facts that demonstrate it has met the requirements of Article III standing, and would remand and allow the District Court to address the merits of Kawa’s claims. I therefore respectfully dissent,

. The owner of Kawa, Larry Kawa, also said in his declaration that he "spent approximately 100 hours researching and familiarizing [him]self with the ACA and the ‘employer mandate.’ ” "Had [he] not spent [his] time researching the ACA and the 'employer mandate’ and seeking and obtaining professional advice on how best to comply with the mandate, [he] would have spent this same time generating new patient referrals for Kawa Ortho.”

. I agree with the majority’s suggestion that Kawa has poorly explained how expending funds in 2013 rather than in 2015 would injure it. However, a party's deficient enunciation of a legal argument does not strip us of our duty to view the complaint in the light most favorable to the plaintiff and determine whether it has alleged facts sufficient to show standing. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990) (“Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.” (quotation marks omitted)).