**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2645
_____

MANUEL PONTES, PH.D.,
Appellant

v.

ROWAN UNIVERSITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-18-cv-17317)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit. L.A.R. 34.1(a)
May 27, 2021
_____

Before: GREENAWAY, JR., SHWARTZ, *Circuit Judges*, AND ROBRENO,* *District Judge*

(Opinion Filed: September 13, 2021)

_____

* Honorable Eduardo C. Robreno, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

———————————

OPINION[*]

———————————

GREENAWAY, JR., *Circuit Judge*.

Manuel Pontes, Ph.D. brought suit against Rowan University (the "University"), a public university, alleging that the University violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and the New Jersey Constitution. Dr. Pontes alleged that the University retaliated against him for taking FMLA-protected leave, interfered with his ability to take future FMLA leave, and violated his substantive due process rights by interfering with his employment by a state institution. The District Court dismissed Dr. Pontes's claims pursuant to the University's Rule 12 motion. We will affirm in part and reverse in part.

I.      **Background**

In the fall of 2017, Dr. Pontes travelled to India to provide emergency assistance to his ninety-year-old mother. Due to the exigent circumstances, Dr. Pontes did not provide the University notice of his travel. Dr. Pontes ensured that his classes would be handled during his absence. Upon his return to the United States, Dr. Pontes's supervisor inquired about why Dr. Pontes's timesheet indicated that he taught while he was out of the country. Dr. Pontes responded that his conduct was consistent with past practices

———————————

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

within his academic department. Dr. Pontes's timesheet for the period covering his trip to India was approved.

On or around March 11, 2018, Dr. Pontes's mother again required assistance, requiring Dr. Pontes to return to India. Dr. Pontes departed during the University's spring break and intended to return for classes after spring break. He did not apply for FMLA leave prior to his departure. But after his mother suffered two falls and was seriously injured, Dr. Pontes informed the University that he needed to apply for FMLA leave and would continue teaching remotely until a replacement could be located. The University approved Dr. Pontes's request for FMLA leave, effective March 24, 2018.

On April 24, 2018, Dr. Pontes's supervisor informed him that the University was going to suspend him without pay for one week due to his absences. Dr. Pontes objected and the University reversed course, rescinding the suspension in a letter dated June 4, 2018. In the same letter, the University stated that it intended to begin a "formal de-tenure process and termination of Dr. Pontes'[s] employment in light of his absence without notification, dereliction of instructional duties, and the fact that this [was] not the first time [Dr. Pontes had] engaged in this type of conduct." Am. Compl., Ex. A.

After Dr. Pontes's counsel contacted the University, the University once again changed course. On September 4, 2018, the University informed Dr. Pontes that he would be suspended for a three-week period, December 29, 2018 through January 18, 2019. Dr. Pontes inferred from the University's communication that it was reversing the decision to initiate de-tenure proceedings. Dr. Pontes alleges that his "pay for January 2019 was substantially reduced." Am. Compl. ¶ 16.

3

On November 20, 2018, Dr. Pontes initiated the instant suit in the Superior Court of New Jersey, Camden County. The University removed the case to the U.S. District Court for the District of New Jersey on December 18, 2018. The University's initial motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), was granted without prejudice, and Dr. Pontes filed the operative amended complaint on September 27, 2019.

The University again moved to dismiss pursuant to Rule 12(b)(6). As a threshold matter, the District Court decided whether it could consider the University's 2017-2018 Academic Calendar, which was attached to the University's first motion to dismiss, and payroll documents, which were attached to the University's second motion to dismiss and its reply brief. Finding that both the calendar and the payroll documents were "integral" to Dr. Pontes's claims, the District Court concluded that it could consider those documents in its analysis of the University's motion to dismiss. J.A. 12–13. The District Court then found that Dr. Pontes lacked Article III standing to assert his FMLA claims because his "redressable injuries ha[d] already been cured through the University's corrective action." J.A. 16. The District Court also found that even if Dr. Pontes had standing to bring his claims, those claims were nonetheless deficient. This timely appeal followed.

## II. Discussion

The District Court had original jurisdiction over Dr. Pontes's FMLA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his substantive due process claim under 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C.

4

§ 1291.  "We exercise plenary review over a district court's decision to grant a motion to dismiss."  *Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004).

### A.  The District Court Erred When Reviewing the University's Standing Challenge

We first address the legal standard that governs our review of the University's challenge to Dr. Pontes's standing.  The University styled its motion to dismiss as one brought pursuant to Rule 12(b)(6) that attacked Dr. Pontes's Article III standing.  The District Court accepted the University's framing of the motion and considered the challenge to Dr. Pontes's standing under Rule 12(b)(6).  We disagree with that approach and conclude that the University's challenge to Dr. Pontes's standing should have been considered under Rule 12(b)(1).  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)) (alteration in original)).

#### 1.  *Legal Standard*

We must first determine whether the University's challenge to Dr. Pontes's standing is a "facial" attack or a "factual" attack "because that distinction determines how the pleading must be reviewed."  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (stating that a court "has to first determine . . . whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue").  "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it

5

is insufficient to invoke the subject matter jurisdiction of the court," while a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* at 358. When "reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *Schering Plough*, 678 F.3d at 243). When reviewing a factual attack, the district court "may look beyond the pleadings to ascertain the facts." *Id.* at 358.

The University argued that Dr. Pontes lacked standing because he "failed to allege any 'injury in fact'. . . . [b]ecause his allegations are merely conjecture and hypothetical." J.A. 49. The University's attack on Dr. Pontes's standing was confined to the facts and allegations contained in the operative complaint, and, as a result, we conclude that it was a facial attack, not a factual attack.[1] *See Const. Party of Pa.*, 757 F.3d at 358–59 (concluding that, contrary to the district court's assessment that the defendants' attack was a factual attack, the defendants advanced a facial attack because the defendants did not raise a factual dispute). Thus, we consider whether Dr. Pontes's claims can withstand the University's facial attack.

---

[1] In its recitation of facts in the motion to dismiss, the University included a footnote averring that Dr. Pontes was "made whole in March 2019, when [the University] repaid [Dr.] Pontes the shortfall in pay from January 2019." J.A. 47. Despite this allegation, which arguably supports the conclusion that the University's standing challenge was a factual attack, we conclude that the University did not mount a factual attack because the University did not argue that the repayment of Dr. Pontes's withheld wages impacted his Article III standing.

The scope of federal judicial power is limited to the adjudication of "cases" and "controversies." U.S. Const., art. III, § 2. "The courts have developed several justiciability doctrines to enforce the case-or-controversy requirement, and 'perhaps the most important of these doctrines' is the requirement that 'a litigant have "standing" to invoke the power of a federal court.'" *Schering Plough*, 678 F.3d at 244 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "A plaintiff must 'demonstrate standing for each claim he seeks to press.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015)).

Article III standing "consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (citation omitted). An "injury-in-fact requires 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Const. Party of Pa.*, 757 F.3d at 361 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he traceability prong focuses on who inflicted that harm[, and] [t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis omitted). Redressability is "'closely related' to traceability, and the two prongs often overlap." *Id.* (quoting *Pub. Interest Research Grp. of N.J. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 73 (3d Cir. 1990)). "[T]raceability looks backward (did the defendants cause the harm?)," and

"redressability looks forward (will a favorable decision alleviate the harm?)." *Id.*

"Redressability is not a demand for mathematical certainty. It is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Id.* at 143 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

### 2. *Analysis*

Dr. Pontes does not have standing to bring his FMLA interference claim because he has not asserted a sufficient injury in fact to support the claim. Dr. Pontes alleged that the University's conduct "*will* interfere with [his] ability to take *future* FMLA leave as they have created in him a fear that doing so *will* subject him to disciplinary proceedings [including] withholding pay and threatened de-tenure." Am. Compl. ¶ 25 (emphasis added). Dr. Pontes does not allege that the University denied him the opportunity to take FMLA leave. In fact, Dr. Pontes alleges that the University approved his FMLA leave when he requested it. Because Dr. Pontes's FMLA interference claim is premised upon a potential future interference with or denial of his ability to take FMLA leave, his alleged injury is too conjectural and hypothetical to support Article III standing.[2] *See Reilly v.*

---

[2] On appeal, Dr. Pontes contends that he has Article III standing based, in part, on the University's withholding of his wages, but he fails to distinguish between his interference and retaliation claims. Even if we were to conclude that Dr. Pontes had Article III standing to pursue his interference claim, we would affirm the District Court's dismissal of that claim based on his failure to state a claim. His failure to allege that he was denied benefits under the FMLA is fatal to his interference claim. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) ("In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.").

*Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III. Instead, '[a] threatened injury must be 'certainly impending[]' and 'proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.'" (first alteration in original) (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 151 (1990), then quoting *Lujan*, 504 U.S. at 564 n.2)).

Dr. Pontes has standing to bring his FMLA retaliation claim and his substantive due process claim. In support of his retaliation claim, Dr. Pontes alleged that the University punished him for "expressing his rights under the FMLA" by reducing his pay in January 2019. Am. Compl. ¶ 16. Similarly, in support of his due process claim, Dr. Pontes alleged that the reduction in pay was a "deprivation of his property rights." Am. Compl. ¶ 19. The withholding of an employee's pay as punishment for invoking his or her rights under the FMLA is an actual, concrete, and particularized injury. *See* 29 C.F.R. § 825.220(c) (providing that the FMLA's "prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights"). Assuming that Dr. Pontes has a property interest in his pay as a state employee, the withholding of that pay is a sufficient injury in fact.

As to the redressability prong, the District Court concluded that (1) Dr. Pontes "lacks a redressable injury because the alleged harms have already been cured by the University," and (2) because Dr. Pontes's "redressable injuries have already been cured through the University's corrective action, [he] would not be entitled to any further relief,

9

such as punitive damages or attorneys' fees, even if he could succeed in demonstrating that [the University] violated the FMLA." J.A. 16. We disagree with both conclusions and conclude that Dr. Pontes satisfies the traceability and redressability prongs for his retaliation claim and his due process claim. [3]

The District Court's view that Dr. Pontes's harms had been "cured" was based on a theory developed in an unpublished, out-of-circuit district court opinion, *King v. Inova Health Care Servs.*, No. 1:19-CV-31, 2020 WL 2108728 (E.D. Va. May 1, 2020). *King*, however, is inapposite because in that case the fulsome factual record presented at summary judgment reflected that the "plaintiff lost neither compensation nor benefits as a result of [the] defendant's actions." *King*, 2020 WL 2108728, at \*12. Here, the litigation is at the motion to dismiss stage and lacks the factual record that would be presented at the summary judgment stage. Also, Dr. Pontes alleged that the University withheld his wages and the University concedes that it did so. [4] This Court, moreover, has never held that a defendant could "cure" alleged FMLA violations by returning wages that it previously withheld. [5]

---

[3] The second prong of standing—traceability—does not require an extended discussion in this case. Dr. Pontes's alleged injuries arise from the University's withholding of his wages, and there can be no reasonable dispute about whether his alleged injuries are traceable to the University's conduct.

[4] We reiterate that the District Court erred when considering the University's allegation that it repaid Dr. Pontes his withheld wages—a fact that was not alleged in Dr. Pontes's complaint—as part of its analysis of a facial attack to standing pursuant to Rule 12(b)(1).

[5] In fact, several sister circuits have held that temporary loss of use of money is itself a sufficiently concrete injury to establish standing. *See, e.g.*, *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("[W]e hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."); *MSPA Claims 1, LLC v. Tenet*

10

The FMLA provides for multiple forms of relief, including: (1) "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," or (in certain cases) other "actual monetary losses sustained by the employee as a direct result of the violation," (2) interest on denied or lost wages or actual monetary losses; (3) liquidated damages, and (4) "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1). To be entitled to these remedies, Dr. Pontes must prove that the University violated the FMLA, and "even then, [the FMLA] provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

The District Court correctly found that (1) under the FMLA, Dr. Pontes is not entitled to punitive damages or damages for pain and suffering or emotional distress, and (2) a favorable judgment was a prerequisite for an award of attorneys' fees. **J.A. 16–17.** The District Court erred, however, when it did not consider, inter alia, (1) whether Dr. Pontes's wages could be considered denied or lost, (2) whether this was a case where Dr. Pontes suffered any actual losses recoverable under the FMLA during the period when the University withheld his wages, (3) whether Dr. Pontes would be entitled to interest on

---

*Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) ("The inability to have and use money to which a party is entitled is a concrete injury."); *Habitat Educ. Ctr. v. U.S. Forest Servs.*, 607 F.3d 453, 457 (7th Cir. 2010) ("Every day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money."); cf. In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig., 928 F.3d 42, 66 (D.C. Cir. 2019) (per curiam) (addressing damages rather than standing and noting that "[t]he delay in those Plaintiffs' receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury").

11

(i) any denied or lost wages, or (ii) any actual losses, (4) whether Dr. Pontes would be entitled to liquidated damages, and (5) whether Dr. Pontes would be entitled to equitable relief.

Because Dr. Pontes seeks (1) to recover the legal fees and costs associated with securing legal representation to respond to the University's actions, (2) "monetary losses," and (3) "liquidated damages," Am. Compl. ¶¶ 22, 25, we conclude that he has satisfied the redressability prong of the standing analysis for his FMLA retaliation and substantive due process claims.

To sum up, Dr. Pontes does not have Article III standing to pursue his FMLA interference claim. He does, however, have Article III standing to pursue his FMLA retaliation claim and his substantive due process claim.

In addition to attacking Dr. Pontes's standing, the University attacked the merits of Dr. Pontes's claim. We now address the District Court's conclusions as to the merits of Dr. Pontes's FMLA retaliation claim and his substantive due process claim.

### B. Dr. Pontes Stated a Claim for FMLA Retaliation

The District Court concluded that even if Dr. Pontes had Article III standing, his FMLA Retaliation claim was nevertheless subject to dismissal under Rule 12(b)(6) because Dr. Pontes's "allegations imply that the University had a legitimate, non-discriminatory, and non-retaliatory reason for imposing discipline." J.A. 21. The District Court also concluded that Dr. Pontes's allegations failed "to support any inference . . .

12

that the University's stated reasons for discipline were pretextual and causally connected to Plaintiff's approved FMLA leave." J.A. 22–23. We disagree.[6]

"[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

---

[6] Despite setting forth the elements that Dr. Pontes was required to plead to establish a prima facie case for retaliation under the FMLA, the District Court then subjected Dr. Pontes's claims to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework applies when the plaintiff's claim is based on circumstantial evidence and is most often employed at summary judgment. *See, e.g.*, *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014). By accepting the University's stated reasons for disciplining Dr. Pontes as true and then requiring Dr. Pontes to offer evidence to rebut those reasons, *without the benefit of discovery*, the District Court misapplied the *McDonnell Douglas* burden-shifting framework, and so it erred in dismissing Dr. Pontes's FMLA retaliation claim. *See Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017).

[7] The District Court did not abuse its discretion when considering Dr. Pontes's payroll records, in the context of a Rule 12(b)(6) motion, because it correctly concluded they are integral to his claims. Dr. Pontes claims that "he was punished for expressing his rights under the FMLA, insofar as his pay for January 2019 was substantially reduced." J.A. 34. Thus, the payroll records are integral to the harm Dr. Pontes alleges, and he likely relied on those records to discover that Rowan withheld his wages. Moreover, considering the payroll records prevents Dr. Pontes from "extracting an isolated" portion of those records, which also show that the University reimbursed Dr. Pontes. *See Burlington Coat Factory*, 114 F.3d at 1426.

The District Court also acted within its discretion to consider the University's academic calendar because it is both a matter of public record and integral to Dr. Pontes's claims.

To assert a prima facie claim for retaliation under the FMLA, Dr. Pontes had to allege facts from which it may be inferred that "(1) []he invoked h[is] right to FMLA-qualifying leave, (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014). Dr. Pontes established his prima facie claim by plausibly alleging that (1) he requested and took FMLA leave in relation to his second trip to India, (2) he suffered an adverse employment decision when the University withheld his pay, and (3) the withholding of his pay was causally related to his taking FMLA leave because it was punishment for his being "absent from the classroom without justification." Am. Compl. ¶ 16.

The University raises several unavailing arguments in opposition to the conclusion that Dr. Pontes asserted a prima facie claim for retaliation under the FMLA. *First*, the University contends that Dr. Pontes is asserting a new theory of his case on appeal or otherwise attempting to amend his complaint via his appellate brief. These arguments fail because they simply ignore relevant portions of the amended complaint in which Dr. Pontes bases his retaliation claim on the University's withholding of his pay. *See* Am. Compl. ¶ 22.

---

First, the public has unqualified access to the University's academic calendars on its website, and Dr. Pontes does not dispute its authenticity. Second, the calendar is integral to Dr. Pontes's claims. Dr. Pontes alleged that "[w]hen he left [to visit his mother], [the University] was on its Spring Break vacation" and that he "intended to return for classes after Spring Break." Am Compl. ¶ 9. Thus, when the University's spring break occurred is integral to Dr. Pontes's allegations, and the Court acted within its discretion to consider the calendar.

*Second*, the University contends that "Dr. Pontes has failed to present any authority standing for the proposition that withholding pay temporarily, in the absence of a disciplinary action, constitutes a violation of § 2615 of the FMLA." Appellee's Br. 21. The substance of this argument—that withholding an employee's pay is not an adverse employment decision under the FMLA—contradicts our view that an adverse employment decision "is an action that '*alters the employee's compensation*, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Budhun*, 765 F.3d at 257 (emphasis added) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

*Third*, the University argues that Dr. Pontes cannot show that he was prejudiced because the University "took timely corrective action." Appellee's Br. 21. But prejudice is not an element of the prima facie case for an FMLA retaliation claim and Dr. Pontes was not required to plead that he was prejudiced.

*Fourth*, the University repeats the District Court's conclusion that Dr. Pontes's allegations fail to support an inference that the University's reasons for disciplining Dr. Pontes were pretextual or causally connected to his FMLA leave. The assessment of whether the University's reasons for disciplining Dr. Pontes were pretextual is a part of the *McDonnell Douglas* analysis and that analysis is better left for the summary judgment stage because it relies upon the parties' competing evidence. As to whether the University's withholding of Dr. Pontes's wages was causally connected to his taking FMLA leave, we have stated that "whether a causal link exists 'must be considered with a

15

careful eye to the specific facts and circumstances encountered.'" *Budhun*, 765 F.3d at 258 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000)). The FMLA provides that "[e]mployers 'cannot use the taking of FMLA leave as a negative factor in employment actions.'" *Id.* (quoting 29 C.F.R. § 825.220(c)). Under the facts and circumstances of the instant case and at this stage of the litigation, Dr. Pontes's allegation that the University withheld his wages as punishment for taking FMLA leave is sufficient to establish a causal connection.

C.     **Dr. Pontes Did Not State a Substantive Due Process Claim Under the New Jersey Constitution**

The District Court dismissed Dr. Pontes's substantive due process claim under the New Jersey Constitution, finding that based on this Court's holding in *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000), "tenured public employment is not a property interest entitled to substantive due process protection." J.A. 18. The District Court further reasoned that "if public employees cannot assert a property interest in continued tenured employment, they also cannot assert a claim for continued salary from the same employment." J.A. 19. As a result, Dr. Pontes could not assert a substantive due process claim based on a property interest in his withheld salary. We agree.

In *Nicholas*, this Court stated that a plaintiff bringing "a non-legislative substantive due process claim . . . 'must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas*, 227 F.3d at 139–40 (quoting *Woodwind Ests., Ltd. v. Gretkowski*,

16

205 F.3d 118, 123 (3d Cir. 2000), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003)). That protected property interest must be of a "particular quality," which "depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* at 140. The *Nicholas* Court held that the plaintiff's claimed property interest in tenured public employment was not a "fundamental" property interest entitled to substantive due process protection. *Id.* at 142.

Applying the holding in *Nicholas* to Dr. Pontes's substantive due process claim, we agree with the reasoning of the District Court. If tenured public employment is not a fundamental property interest entitled to substantive due process protection, then Dr. Pontes's withheld salary, which is derived from his tenured public employment, is similarly not fundamental and not entitled to substantive due process protection under the United States Constitution and the New Jersey Constitution. *See Roman Check Cashing, Inc. v. N.J. Dep't of Banking & Ins.*, 777 A.2d 1, 3 (N.J. 2001) ("In cases raising substantive due process claims under our state constitution, this Court uses the 'standards developed by the United States Supreme Court under the federal Constitution.'" (quoting *State Farm Mut. Auto. Ins. Co. v. State*, 590 A.2d 191, 198 (N.J. 1991))).

Dr. Pontes contends that the District Court mistakenly relied on *Salah v. Gilson*, No. A-3617-11T2, 2013 WL 1688379 (N.J. Super. Ct. App. Div. Apr. 19, 2013). Appellant's Br. 24. Specifically, he argues that *Salah* stands for the proposition that a tenured teacher has a fundamental property interest entitled to substantive due process protections. *See* Appellant's Br. 24. Dr. Pontes, however, misreads and misquotes *Salah*,

17

which held that "a non-tenured teacher *does not* possess a sufficient property interest in continued employment to trigger substantive due process protection." *Salah*, 2013 WL 1688379, at *10 (emphasis added). The District Court, accordingly, did not err when it dismissed Dr. Pontes's substantive due process claim.

## III. Conclusion

For the reasons set forth above, we will affirm the District Court's dismissal of Pontes's FMLA interference claim and his substantive due process claim. We will vacate the District Court's dismissal of Dr. Pontes's FMLA retaliation claim and remand for further proceedings consistent with this opinion.